Gina DELAROSA, Plaintiff,

v.

BOIRON, INC.; and John Does 1–20, Defendants.

No. 8:10–CV–1569–JST (CWx).

United States District Court, C.D. California.

Aug. 24, 2011.

tions as the challenged evidence has no bearing on the ultimate disposition of this matter.

Ryan M. Ferrell, Call Jensen & Ferrell, Scott J. Ferrell, Newport Trial Group, Newport Beach, CA, for Plaintiff.

Brendan M. Walsh, Patton Boggs LLP, Newark, NJ, Christina Guerola Sarchio, Patton Boggs LLP, Washington, DC, Gary A. Pemberton, John Mark Jennings, Shulman Hodges and Bastian LLP, Irvine, CA, for Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND DENYING AS MOOT PLAINTIFF'S MOTION TO STRIKE AND DEFENDANT'S MOTION TO STRIKE**

JOSEPHINE STATON TUCKER, District Judge.

On January 14, 2011, Plaintiff Gina Delarosa filed a Motion for Class Certification.

(Doc. 26.) Defendant Boiron, Inc. filed its Opposition on March 14, 2011. (Doc. 49.) Defendant also filed a Motion to Strike the declaration of Dr. Lynn R. Willis, which was filed in support of Plaintiff's Motion for Class Certification. (Doc. 48.) Plaintiff filed a Reply in support of the Motion for Class Certification on April 4, 2011 (Doc. 52), and an Opposition to Defendant's Motion to Strike on April 25, 2011 (Doc. 55). Plaintiff also filed a Motion to Strike the declaration of Dr. Robert Charles Dumont, which was filed in support of Defendant's Opposition to the Motion for Class Certification. (Doc. 54.) Defendant filed an Opposition to Plaintiff's Motion to Strike (Doc. 56), and both parties filed Replies in support of their respective Motions to Strike (Docs. 59, 60.)

Because the Court does not rely on the declarations that are the subject of each party's Motion to Strike, both Defendant's Motion to Strike (Doc. 48) and Plaintiff's Motion to Strike (Doc. 54) are DENIED as MOOT. Having read the papers, and for the reasons set forth below, the Court GRANTS Plaintiff's Motion for Class Certification.

## I. BACKGROUND

Defendant Boiron, Inc. is the manufacturer and distributor of Children's Coldcalm ("Coldcalm"). (Doc. 1, Ex. 2, Compl. ¶ 2.) Coldcalm belongs to a class of medicine known as "natural" or "homeopathic," and is described as such on its packaging. (Id. ¶ 11; id. Ex. 2.) The homeopathic ingredients in Coldcalm include various flowers, vegetables, insects, metals, and poison. (Id. ¶ 17.) Defendant advertises on the outside of the package that Coldcalm will relieve symptoms of the common cold, including: sneezing, runny nose, nasal congestion, sinus pain, headaches, and sore throat. (Id. ¶ 7.)

Plaintiff Gina Delarosa read Defendant's advertisements on the outside of the Coldcalm package and read about Coldcalm on a website. (Id. ¶ 8; id. Exs. 1, 2.) After reading that Coldcalm relieved cold symptoms, Plaintiff purchased Coldcalm, and her family used the drug as directed. (Id. ¶ 8.) Plaintiff's family did not obtain the advertised relief from the common cold, nor did they receive any benefits from using Coldcalm. (Id.) Plaintiff filed a Complaint alleging three claims: (1) violation of the California Legal Remedies Act ("CLRA"); (2) common-law fraud; and (3) violation of the California Unfair Competition Law ("UCL"). (Id. ¶¶ 29–46.) Plaintiff seeks to represent persons located within California who purchased Coldcalm for personal use at any time during the four years preceding the filing of the Complaint. (Id. ¶ 22.) Plaintiff requests all available legal and equitable remedies. (Id. at 11.) Plaintiff purports to represent others similarly situated for all three of these claims, and requests certification of the following class: "All persons located within California who purchased Children's Coldcalm for personal use at any time during the four years preceding the filing of this Complaint." (Id. ¶ 22.)

## II. DISCUSSION[1]

### A. Standing

As an initial matter, although not disputed by Defendant, the Court holds that Plaintiff has standing to file claims under the UCL

---

1. As a preliminary matter, Defendant argues that Plaintiff's Motion for Class Certification should be stricken because it is untimely and because Plaintiff failed to comply with Local Rule 7–3. (Opp'n at 3–5.) Defendant initially raised these issues with the Court in an *ex parte* application to strike Plaintiff's Motion for Class Certification on January 24, 2011, which was rejected by the Court for failure to show good cause. (Doc. 34.) The Court noted that the Motion was "timely" filed and that a defendant to a class action litigation cannot claim it is surprised by the timely filing of a Motion for Class Certification, pursuant to local and federal rules. (Id.)

The Court continues to find that the Motion was timely. *See* C.D. Cal. R. 1–1 (limiting the scope of local rule 23–3 to cases in the "Central District of California"); C.D. Cal. R. 23–3 (stating that the 90 day deadline starts after "service of a pleading"). Moreover, "the Court has discretion to permit class certification after the 90 day period under the Local Rules." *Misra v. Decision One Mortg. Co., LLC,* 673 F.Supp.2d 987, 993–94 (C.D.Cal.2008). Finally, Defendant has failed to argue that it would be prejudiced by the allowance of the Motion, no doubt because the Court gave Defendant an additional four weeks to file any Opposition. (Doc. 34.) Therefore, the Court DENIES Defendant's request to strike Plaintiff's Motion for failure to comply with local rules 7–3 or 23–3.

and CLRA.[2] The UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. & Prof.Code § 17200. Under the UCL, as amended by Proposition 64, a private plaintiff has standing to bring a UCL claim if the plaintiff "has suffered injury in fact and has lost money or property as a result of the unfair competition." *Id.* § 17204. The California Supreme Court has held that the phrase "['as a result of'] imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." *In re Tobacco II Cases,* 46 Cal.4th 298, 93 Cal.Rptr.3d 559, 207 P.3d 20, 39 (2009).

■ The CLRA prohibits twenty-four enumerated unlawful practices, including "[r]epresenting that goods or services are of a particular standard, quality, or grade ... if they are another." Cal. Civ.Code § 1770(a)(7). A private plaintiff has standing under the CLRA if she has been damaged "as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 ...." Cal. Civ.Code § 1780(a). Like the UCL, the phrase "as a result of" in the CLRA imposes an actual reliance requirement on the private litigant. *See Steroid Hormone Prod. Cases,* 181 Cal.App.4th 145, 104 Cal.Rptr.3d 329, 338–39 (2010).

■ In California, a plaintiff can prove reliance "by showing that the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct." *In re Tobacco II Cases,* 93 Cal.Rptr.3d 559, 207 P.3d at 39 (internal quotation marks and citation omitted). One way for a plaintiff to prove that the misrepresentation was "an immediate cause" of the plaintiff's injury-producing conduct is by showing that in the absence of the misrepresentation, "the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct." *Id.* (internal quotation marks and citation omitted). "Moreover, a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material." *Id.* (citation omitted). And in California, a misrepresentation is considered material "if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question...." *Id.* (internal quotation marks and citation omitted).

Here, Plaintiff has standing to file claims under the UCL and the CLRA, because she alleges that she bought Coldcalm as a result of Defendant's allegedly deceptive representations that Coldcalm would ease the symptoms of a cold, as communicated by the labels on Coldcalm's packaging and by Coldcalm's website. She further asserts that neither she nor her children received the promised easing of their cold symptoms. Finally, she alleges that she suffered economic injury because she purchased Coldcalm in reliance of its promise of cold symptom relief, and the product did not work. In other words, she alleges that Defendant's misrepresentation about Coldcalm's efficacy was a material misrepresentation. The Court has no trouble finding that a "reasonable man" would attach importance to a statement that a product, which appears to have no purpose other than to remedy colds, does, in fact, relieve the symptoms of a cold. *See Steroid Hormone Prod. Cases,* 104 Cal.Rptr.3d at 338–39. Thus, the Court concludes that Plaintiff has standing to bring a UCL claim and a CLRA claim. Moreover, the Court also finds that the absent class members have standing for these claims. *See In re Tobacco II Cases,* 93 Cal.Rptr.3d 559, 207 P.3d at 25 ("We conclude that standing requirements [for a UCL class action] are applicable only to the class representatives, and not all absent class members."); *Steroid Hormone Prod. Cases,* 104 Cal.Rptr.3d at 338 (holding that if a plaintiff can show that material misrepresentations were made to the class members, there is at least an inference of reliance, and thus causation and injury, that arises as to the entire class); *see also Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, No. 08–56065,

---

**2.** The Court already held that Plaintiff alleged fraud with sufficient particularity to survive Defendant's Motion for Judgment on the Pleadings. (Doc. 75.)

slip op. 11341, 11354–55, 11358, 2011 WL 3659354 (9th Cir. Aug. 22, 2011).

### B. *Legal Standard for Rule 23 Class Actions*

"To obtain class certification, a class plaintiff has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to Rule 23(b)." *Narouz v. Charter Commc'ns, LLC,* 591 F.3d 1261, 1266 (9th Cir.2010). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal–Mart Stores, Inc. v. Dukes,* — U.S. —, 131 S.Ct. 2541, 2550, 180 L.Ed.2d 374 (2011). Under Rule 23(a), the party seeking certification must demonstrate:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Dukes,* 131 S.Ct. at 2548. Rule 23(b) is satisfied if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed.R.Civ.P. 23(b).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes,* 131 S.Ct. at 2551. This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.*

### C. *Requirements Under Rule 23(a)*

#### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). The Court is persuaded by other district court's holdings that "[a]s a general rule, classes of forty or more are considered sufficiently numerous." *Mazza v. Am. Honda Motor Co.,* 254 F.R.D. 610, 617 (C.D.Cal.2008); *see also Harris v. Palm Springs Alpine Estates,* 329 F.2d 909, 913–914 (9th Cir.1964) (" 'Impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class.") (internal quotation marks and citation omitted).

In this case, discovery has yet to begin; therefore, Plaintiff is without the benefit of any documents to support her allegations of numerosity. Instead, Plaintiff argues that the class meets Rule 23(a)'s numerosity requirement because Coldcalm is sold in major retail stores throughout California. (Mot. at 14.) Plaintiff relies on the proposition that "[w]here 'the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.'" *In re Abbott Labs. Norvir Anti–Trust Litig.,* Nos. C 04–

1511 CW, C 04–4203 CW, 2007 WL 1689899, at *6 (N.D.Cal. June 11, 2007) (quoting 1 Alba Cone & Herbert B. Newberg, *Newberg on Class Actions* § 3.3 (4th ed. 2002)).

Defendant sets forth three reasons why Plaintiff cannot establish numerosity, none of which the Court finds persuasive. First, Defendant argues that because Plaintiff does not know any of the other potential class members, "she has no independent knowledge that even one other potential claimant exists." (Opp'n at 8.) It is axiomatic, however, that a named plaintiff need not have met another claimant in order to establish that other claimants exist. Second, Defendant argues that because the class includes people who purchased Coldcalm for "personal use," it only includes adults who used Coldcalm (advertised as a remedy for children) on themselves and does not include adults who bought Coldcalm on behalf of their children. (*Id.*) As noted by Plaintiff, however, Federal Rule of Civil Procedure 17(a)(1)(C) permits a guardian to "sue in their own names without joining the person for whose benefit the action is brought." Fed.R.Civ.P. 17(a)(1)(C). Therefore, the Court understands Plaintiff's use of the term "personal use" to include the use by a class member's minor children.

Third, Defendant relies on *Schwartz v. Upper Deck Co.,* 183 F.R.D. 672 (S.D.Cal.1999), for the proposition that "[s]ales volume standing alone cannot serve as the basis of a numerosity finding." (Opp'n at 8 (quoting *Schwartz,* 183 F.R.D. at 681).) As noted by Plaintiff, however, Defendant takes the quotation out of context, the full quotation reads "Sales volume standing alone cannot serve as the basis of a numerosity finding *in this case.*" *Schwartz,* 183 F.R.D. at 681 (emphasis added). In *Schwartz,* the underlying legal claim was that of an illegal lottery or gambling, therefore, the potential class was restricted to those who purchased a package of sports cards for the purpose of finding a valuable card that was sometimes hidden inside the package. *Id.* at 676. Because simply purchasing the defendant's product was insufficient to be included in the class, the sales volume standing alone was insufficient to meet the plaintiffs' burden of establishing numerosity of the class. *Id.* In this case,

however, the class consists of all Coldcalm purchasers in California; therefore, sales volume in California would support a finding that Plaintiff met her burden of establishing numerosity.

Plaintiff submitted testimony that she purchased Coldcalm at a CVS. (Decl. of Gina Delarosa, Doc. 26–6.) Defendant submitted testimony that Coldcalm was never sold by CVS. (Decl. of Mark Land, Doc. 49–1.) Plaintiff then submitted testimony that undercuts the reliability of the testimony submitted by Defendant. (Decl. of Andrew Baslow, Doc. 52–5; Decl. of Judy Pettiford, Doc. 52–7.) In light of the fact that discovery is ongoing and that Defendant is in the best possible position to submit to the Court evidence of whether Coldcalm was sold in retail drugstores in California during the time in question, the Court finds that, at this point in the litigation, Plaintiff has set forth sufficient evidence that drugstores like CVS have sold Coldcalm, such that Plaintiffs have established numerosity.

### 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes,* 131 S.Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 157, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). The plaintiff must allege that the class' injuries "depend upon a common contention" that is "capable of classwide resolution." *Id.* In other words, the "determination of [the common contention's] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification ... is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal quotation marks and citation omitted).

Plaintiff must carry her burden of showing commonality. As a preliminary matter, the Court finds that, for purposes of class certification, Plaintiff's three claims for

(1) violation of the UCL on the basis of fraudulent business practices, (2) violation of the CLRA, and (3) common-law fraud, may be analyzed together.[3] The elements of a common-law fraud claim appear to be identical to those of a CLRA claim for punitive damages, and inclusive of a UCL claim for fraudulent business practices and a CLRA claim that does not seek punitive damages. Here, Plaintiff alleges facts sufficient for a common-law fraud claim, and relies on those same facts to support her claims under the UCL and the CLRA.

█ Plaintiff alleges that Defendant misrepresented Coldcalm's efficacy on the product's packaging. (Mot. at 15.) Plaintiff also argues that Defendant is aware that its representations of efficacy are false, but that Defendant continues to market Coldcalm for financial profit. (*Id.* at 5.) Thus, Plaintiff alleges a single misrepresentation that was made identically to all potential class members. Plaintiff's injury is in purchasing Coldcalm in reliance on the alleged misrepresentation that it would provide relief from the common cold, when it fact it does not provide such relief. (*Id.* at 15.) Similarly, the putative class' injury is purchasing Coldcalm, in reliance on the alleged misrepresentation of its efficacy. (*Id.*) Because a determination of the truth or falsity of Defendant's representation of Coldcalm's efficacy will resolve an issue that is central to the validity of each one of the claims in one stroke, the Court concludes that Plaintiff has carried her burden of showing commonality. *See Dukes,* 131 S.Ct. at 2551.

### 3. Typicality

█ Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Dukes v. Wal–Mart,* 603 F.3d 571, 613 (9th Cir. 2010) (en banc) (quoting *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir.1998)), *rev'd on other grounds,* —— U.S. ——, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). As to the representative, "[t]ypicality requires that the named plaintiffs be members of the class they represent." *Id.* at 613 (citing *Falcon,* 457 U.S. at 156, 102 S.Ct. 2364). The commonality, typicality, adequacy-of-representation requirements "tend to merge" with each other. *Dukes,* 131 S.Ct. at 2551 n. 5 (citing *Falcon,* 457 U.S. at 157–58 n. 13, 102 S.Ct. 2364).

█ Plaintiff argues that her claim is typical, because she purchased Coldcalm in California, she relied on the representation on the Coldcalm package that it relieves the symptoms of a common cold, and she suffered economic injury because Coldcalm does not relieve the symptoms of a common cold. (Mot. at 16.) Defendant argues that Plaintiff's claim is not typical because (1) Plaintiff does not know whether others feel the same way about Coldcalm as she does; (2) Plaintiff does not know from what sickness she and

---

**3.** Although the elements of these three claims are similar, they are not identical. *Compare* Cal. Civ.Code § 1780(a), *with* Cal. Bus. & Prof.Code § 17204, *and with Robinson Helicopter Co. v. Dana Corp.,* 34 Cal.4th 979, 22 Cal.Rptr.3d 352, 102 P.3d 268, 274 (2004) ("The elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage."). Indeed, to prove common-law fraud, Plaintiff must establish that Defendant's statement was actually false, that Defendant was aware of the misrepresentation, and that Defendant made the misrepresentation in order to defraud Plaintiff. *Robinson Helicopter Co.,* 22 Cal.Rptr.3d 352, 102 P.3d at 274. In addition, for Plaintiff to receive punitive damages under the CLRA, she must establish that Defen-

dant was "guilty of oppression, fraud, or malice...." Cal. Civ.Code § 3294(a). In each of these claims, however, the Plaintiff establishes an inference of justifiable reliance (and thus causation/damages) that can be applied to all class members by showing a material misrepresentation as determined by the reasonable man standard. *See, e.g., In re Tobacco II Cases,* 93 Cal. Rptr.3d 559, 207 P.3d at 39 (UCL); *Occidental Land, Inc. v. Superior Court,* 18 Cal.3d 355, 134 Cal.Rptr. 388, 556 P.2d 750, 754 (1976) (in bank) (relying on the principles set forth in *Vasquez v. Superior Court,* 4 Cal.3d 800, 94 Cal.Rptr. 796, 484 P.2d 964, 972–73 (1971)) (common-law fraud); *Steroid Hormone Prod. Cases,* 104 Cal. Rptr.3d at 338–39 (CLRA); *see also Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, No. 08–56065, slip op. 11341, 11358, 2011 WL 3659354 (9th Cir. Aug. 22, 2011).

her minor children were suffering when they took Coldcalm; (3) Plaintiff's symptoms did not get worse after taking Coldcalm and Plaintiff does not know whether that might have been a result of taking Coldcalm; (4) Plaintiff does not have a receipt of her purchase and claims to have purchased Coldcalm at a store where Defendant states Coldcalm was not sold; and (5) Plaintiff is an adult who took a children's medicine and, as an adult, she cannot possess the same interest or suffer the same injury as the class members, who Defendant implies can only be minor children. (Opp'n at 10–12.) Defendant does not provide sufficient support for these arguments.

First, to prove typicality, Plaintiff need not know what others in the class think about Coldcalm. Second, Plaintiff's knowledge regarding why she and her family were sick or whether taking Coldcalm prevented her symptoms from worsening relates to the merits of Plaintiff's claim regarding Coldcalm's efficacy, and not to whether Plaintiff's claims are typical of the class. Third, as noted by the Court in the numerosity section, the parties have submitted conflicting evidence to support the allegation that Plaintiff purchased Coldcalm and that she purchased the product at a CVS, but Plaintiff has submitted sufficient evidence at this point in the case to support her claim for typicality. Finally, as also noted by the Court in the numerosity section, pursuant to Federal Rule of Civil Procedure 17, Plaintiff may sue in her own name on behalf of her minor children without joining them as named representatives. Fed.R.Civ.P. 17(a)(1)(C). Thus, the Court concludes that Plaintiff's claim, on behalf of herself and her minor children, are typical of the class.

### 4. Representative Party

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). "This factor requires: (1) that the proposed representative plaintiffs do not have conflicts of interest with the proposed class, and (2) that plaintiffs are represented by qualified

and competent counsel." *Dukes,* 603 F.3d at 614 *rev'd on other grounds,* —— U.S. ——, 131 S.Ct. 2541, 180 L.Ed.2d 374.

■ First, the Court considers whether Plaintiff has any conflicts with the proposed class. Plaintiff argues that her "claims arise from the same uniform misrepresentation and standardized conduct of Defendant as the Class and Plaintiff seek [sic] remedies equally applicable and beneficial to the Class." (Mot. at 17.) The Court agrees. Defendant argues that Plaintiff cannot adequately protect the interests of the class, because she will be barred from pursuing CLRA damages and because she lacks credibility. (Opp'n at 12–13.) The Court previously held that Plaintiff complied with California Civil Code § 1782(a), therefore she is not barred from pursuing CLRA damages. (Doc. 75.) In addition, as a result of the conflicting evidence regarding where Coldcalm is sold and where Plaintiff purchased the product, the Court has yet to make a determination as to whether the credibility of Plaintiff or Defendant has come into question. Thus, at this point in the litigation, the Court concludes that Plaintiff may adequately protect the interests of the class.

Second, as to the adequacy of Plaintiff's counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed.R.Civ.P. 23(g)(1)(A). Here, Plaintiff's counsel sets forth by declaration the vast experience he and his firm have in litigating class action lawsuits in California state and federal courts. (Decl. of Scott J. Ferrell, Doc. 26–5.) Defendant makes a number of arguments as to why counsel is not fit to lead this action, all of which were previously addressed by this Court in this Order. Therefore, in reliance on Plaintiff's counsel's declaration, the Court concludes that Plaintiff's counsel is adequate.[4]

4. The Court cautions Plaintiff's counsel, however- er, that it has some concerns based on the filings

### D. Requirements Under Rule 23(b)

In addition to establishing the elements of Rule 23(a), Plaintiffs must also satisfy one of the three subsections of Rule 23(b). Fed. R.Civ.P. 23(b). Plaintiff seeks certification under both Rule 23(b)(2) and Rule 23(b)(3). In the Ninth Circuit, a class may be certified under both 23(b)(2) and 23(b)(3). *Smith v. Univ. of Wash., Law Schl.*, 233 F.3d 1188, 1196 (9th Cir.2000). For the reasons set forth below, the Court holds that certification for certain subclasses is appropriate under Rule 23(b)(2) and that certification for the entire class is appropriate under Rule 23(b)(3).

#### 1. Rule 23(b)(2)

Under Rule 23(b)(2), a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2). In *Wal–Mart Stores, Inc. v. Dukes*, the Supreme Court recently further clarified when a Rule 23(b)(2) class certification is appropriate.

Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

131 S.Ct. at 2557. The Supreme Court did not decide whether classes certified under Rule 23(b)(2) may *only* seek injunctive or declaratory relief. *Id.* Neither did the Supreme Court find it necessary to decide "whether there are any forms of 'incidental' monetary relief that are consistent with the interpretation of Rule 23(b)(2)" that also comply with the Due Process Clause. *Id.* at 2560.

Here, Plaintiff has requested injunctive relief, but has also requested actual damages, punitive damages, statutory damages, and any other equitable or legal relief deemed proper pursuant to California Civil Code section 1780.[5] (*See* Doc. 1, Ex. 2 ¶ 36.) The Court finds itself without guidance from the Supreme Court, and without any post-*Wal–Mart v. Dukes* precedents from the Ninth Circuit regarding certification of a 23(b)(2) class that requests both monetary and injunctive relief.

To the extent that Plaintiff seeks injunctive relief, the Court concludes that a subclass may be certified under Rule 23(b)(2). As previously discussed by the Court in finding that Plaintiff met her burden of establish-

and arguments made in opposing Defendant's Motion for Judgment on the Pleadings. Specifically, the Court notes that this action concerns novel legal theories in a specialized area of law, and some of Plaintiff's arguments suggest that counsel lacks either the expertise necessary to effectively litigate in this field or the resources to research, learn, and present to this Court arguments in this area of law that will adequately represent the interests of the class. For example, at oral argument, Plaintiff's counsel persisted in arguing that there is no express preemption clause that could potentially apply to this action, relying on *Wyeth v. Levine*, 555 U.S. 555, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009). The Supreme Court noted in *Wyeth*, however, that "[i]n 1997, Congress pre-empted certain state requirements concerning over-the-counter medications and cosmetics...." *Id.* at 1200 n. 8. Thus, it is clear to this Court that, regardless of whether the express preemption clause in 21 U.S.C. § 379r applied to the matter at hand, the Court still needed to consider it and determine how it might affect the analysis of the action.

More importantly, the Court ordered both parties to submit supplemental briefing on the application of section 379r's express preemption clause to this case, in light of subsection 379r(d)(1). (Doc. 58.) The Court believed, and later decided, that the exception set forth in section 379r(d)(1) might be applicable to the case at hand, but thought it prudent to allow the parties to set forth their arguments, as the subsection was not addressed at any point in the earlier briefing. Despite the fact that the Court's Order clearly stated that each party was "to submit supplemental briefing on the applicability of 21 U.S.C. § 379r(d)(1) to this case," Plaintiff's counsel submitted a supplemental brief that completely ignored the Court's order and failed to analyze or even recite the subsection. (*See* Doc. 61) Plaintiff's counsel would be well-advised to pay close attention to the Court's future orders.

**5.** Damages are not available under the UCL to private plaintiffs. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 131 Cal.Rptr.2d 29, 63 P.3d 937, 943 (2003).

ing commonality of facts and law; in this case, should it be determined that Defendant misled consumers regarding the efficacy of Coldcalm, then an injunction prohibiting Defendant from selling Coldcalm with the misleading information would "provide relief to each member of the class." *Dukes,* 131 S.Ct. at 2557.

To the extent that Plaintiff seeks monetary relief that is "incidental" to the injunctive relief sought, the Court looks to standard set forth by the Fifth Circuit in *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402 (5th Cir.1998). *Dukes,* 131 S.Ct. at 2560 (discussing the standard set forth in *Allison* without holding it to be correct or incorrect).

In *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 415 (C.A.5 1998), the Fifth Circuit held that a (b)(2) class would permit the certification of monetary relief that is "incidental to requested injunctive or declaratory relief," which it defined as "damages that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief." In that court's view, such "incidental damage should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new substantial legal or factual issues, nor entail complex individualized determinations."

*Id.* Prior to the Ninth Circuit's adoption of the "predominance" test, which was found to be inadequate by the Supreme Court, the Ninth Circuit also permitted a class seeking monetary relief to be certified under Rule 23(b)(2), "where such relief is 'merely incidental to [the] primary claim for injunctive relief.'" *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1195 (9th Cir.2001) (quoting *Probe v. State Teachers' Ret. Sys.,* 780 F.2d 776, 780 (9th Cir.1986)). Thus, the Court must consider whether Plaintiff's claims for monetary damages are incidental to Plaintiff's claim for injunctive relief. Here, Plaintiff has requested four types of monetary damages pursuant to the CLRA: (1) actual damages; (2) punitive damages; (3) statutory damages of no less than $1,000 per class member; and (4) statutory damages of $5,000 for each class member who is

a senior citizen or disabled person and "who has suffered substantial physical, emotional, or economic damages." (Doc. 1, Ex. 2 ¶ 36.)

First, the Court holds that "actual damages" in this case would be "incidental" to the injunctive relief sought. "In California, a defrauded party is ordinarily limited to recovering his out-of pocket loss." *Alliance Mortg. Co. v. Rothwell,* 10 Cal.4th 1226, 44 Cal.Rptr.2d 352, 900 P.2d 601, 609 (1995) (in bank) (internal quotation marks and citations omitted). "In fraud cases involving the 'purchase, sale or exchange of property,' the [California] Legislature has expressly provided that the 'out-of-pocket' rather than the 'benefit-of-the-bargain' measure of damages should apply." *Id.* (citing Cal. Civ.Code § 3343(a), (b)(1)). In a case such as this one, Plaintiff is limited to the "[a]mounts actually and reasonably expended in reliance upon the fraud." Cal. Civ.Code § 3343(a)(1). In other words, Plaintiff is limited to the amount she spent purchasing packages of Coldcalm. Thus, in this instance, the amount of restitution under the UCL and actual damages under the CLRA is the same. In order to determine the amount of actual damages for each class member, no additional facts or individualized hearings would be necessary; proof of purchase, i.e. proof of harm, would entitle each class member to the same restitution, differing only due to the number of packages purchased. Therefore, the Court concludes that actual damages under the CLRA and restitution under the UCL are "incidental" to injunctive relief.

Second, the Court holds that in this case, punitive damages would also be "incidental" to the injunctive relief being sought. "Punitive damages are recoverable in those fraud actions involving intentional, but not negligent, misrepresentations." *Alliance Mortgage Co.,* 44 Cal.Rptr.2d 352, 900 P.2d at 610. Additionally, in order for Plaintiff to receive punitive damages under the CLRA, Plaintiff must establish that Defendant was "guilty of oppression, fraud, or malice...." Cal. Civ. Code § 3294(a); *see, e.g., Graciano v. Robinson Ford Sales, Inc.,* 144 Cal.App.4th 140, 50 Cal.Rptr.3d 273, 279 (2006) (noting that, for purposes of punitive damages, a jury found the defendant violated the CLRA by engag-

ing in conduct with malice, oppression and fraud). As a general matter, "the fact that punitive damages are pled [under the CLRA] will not alone bar class certification." *Lewis v. Robinson Ford Sales, Inc.*, 156 Cal. App.4th 359, 67 Cal.Rptr.3d 347, 355 (2007). However, in certifying a 23(b)(2) class, the Court must examine whether a claim for punitive damages in this action will result in damages that are not incidental to the injunctive relief sought.

Unlike some cases in which individualized issues of fraud require each class member to give testimony, submit evidence, and have individualized hearings in order to determine if punitive damages are appropriate, here, Plaintiff alleges that Defendant's intentional misrepresentation was identical for each class member. Defendant is alleged to have intentionally misrepresented the efficacy of Coldcalm on the outside of the product packaging. A determination as to whether Defendant knew that the statement on the outside of the Coldcalm packaging was false will, in one stroke, permit the fact finder to grant the injunctive relief sought and to grant punitive damages. Moreover, as noted above, the injury alleged by each class member is identical, therefore, at this point in the litigation there is no reason to believe that any individualized hearings would be necessary to determine how to divide up any punitive damages.

Third, although not discussed by the parties, Plaintiff's request for "statutory damages of no less than $1,000 per class member pursuant to California Civil Code Section 1780(a)(1)" does not appear to be relief available under the CLRA. (*See* Doc. 1, Ex. 2 ¶ 36(d).) Section 1780 states:

> (a) Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person to recover or obtain any of the following: (1) Actual damages, but in no case shall the total award of damages in a class action be less than one thousand dollars ($1,000).

Cal. Civ.Code § 1780(a)(1). The statute does not appear to allow *each* class member to receive $1,000 *in addition* to actual damages. *See id.* Instead, based on the plain language of the statute, an entire class may receive no less than $1,000. *See id.* Limited to this plain reading of the statute, the Court concludes that such damages would be "incidental" to the injunctive relief sought. A finding that the injunctive relief should be granted would result in the granting of actual damages as set forth above and would only invoke this portion of the subsection on actual damages if the total actual damages were less than $1,000. *See id.* No additional proof or individualized hearings would be necessary to establish this projection.

■ Finally, the Court holds that the fourth type of monetary damages, which is available only to senior citizens or disabled persons, does not qualify as "incidental" under the test set forth in *Allison*. For a class member to receive the additional award of $5,000, the trier of fact must make an affirmative finding that: (1) the class member is either a senior citizen or disabled person as defined in subdivisions (f) and (g) of California Civil Code section 1761; (2) the class member "has suffered substantial physical, emotional, or economic damage resulting from the defendants conduct"; (3) "one or more of the factors set forth in subdivision (b) of [California Civil Code section] 3345" has been met; and (4) "an additional award is appropriate." Cal. Civ.Code § 1780(b). Because making these findings would require additional hearings to resolve the disparate merits of each individual's case, the introduction of new substantial legal or factual issues, and entail complex individualized determinations, the Court concludes that this relief is not "incidental" to the injunctive relief sought. *See Dukes,* 131 S.Ct. at 2561. Thus, any subclass seeking these damages may not be certified under Rule 23(b)(2).

### 2. Rule 23(b)(3)

■ Under Rule 23(b)(3), a class action may be maintained if: "[1] the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and [2] that a class action is *superior* to other available methods for fairly and efficiently

adjudicating the controversy." Fed. R. Civ. R. 23(b)(3) (emphasis added). When examining a class that seeks to be certified under Rule 23(b)(3), the Court may consider:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. R. 23(b)(3). The Court finds that Plaintiff's claim satisfies both the predominance and superiority requirements.

As to the predominance factor, the Supreme Court has explained that it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed. 1986)).

Here, Plaintiff alleges that Defendant misrepresented Coldcalm's efficacy on the product's packaging. (Mot. at 15.) Plaintiff's injury is in purchasing a product, in reliance on the alleged misrepresentation that it would provide relief from the common cold, when it fact it does not provide such relief. (*Id.*) A determination by the trier of fact that Coldcalm misrepresented its efficacy to Plaintiff will also resolve the common question of whether Coldcalm misrepresented its efficacy to all California consumers of Coldcalm. *See Hanlon*, 150 F.3d at 1022. Defendant's argument that a large number of factors went into each consumer's decision to purchase Coldcalm is not supported by the record before the Court at this time. Moreover, "[t]he fact a defendant may be able to defeat the showing of causation as to a few individual class members does not transform the common question into a multitude of individual ones; plaintiffs satisfy their burden of showing causation as to each by showing materiality as to all." *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282, 119 Cal.Rptr.2d 190, 197 (2002).

In addition, Defendant's arguments that it can present proof that Coldcalm worked for some individual class members goes to the proof of the merits of Plaintiff's claim, not to the common question as to the overall efficacy of the product. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173 (9th Cir.2010) (holding that defendant's arguments regarding plaintiff's evidence of a common defect relate to the merits of the claim and do not overlap with the predominance test in Rule 23(b)(3)). Finally, Defendant's argument that Plaintiff's use of the phrase "All persons located within California" prevents predominance of common questions because it will capture all "who happen to be *located within* California at the time of class certification" is not persuasive. Plaintiff states that the class definition could instead use the term "All persons who are domiciled or reside in California," and capture the same set of class members. (Reply, Doc. 52, at 23.) As this appears to address Defendant's concerns, the Court will use this language and modify the class definition.

The Court also finds that a class action would be a superior method of adjudicating Plaintiff's claims. "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Id.* Here, each member of the class pursuing a claim individually would burden the judiciary and run afoul of Rule 23's focus on efficiency and judicial economy. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir.2009) ("The overarching focus remains whether trial by class representation would further the goals of efficiency and judicial economy."). Further, litigation costs would

likely "dwarf potential recovery" if each class member litigated individually. *Hanlon,* 150 F.3d at 1023. "[W]here the damages each plaintiff suffered are not that great, this factor weighs in favor of certifying a class action." *Zinser,* 253 F.3d at 1199 n. 2 (quoting *Haley v. Medtronic, Inc.,* 169 F.R.D. 643, 652 (C.D.Cal.1996)).

Considering the non-exclusive factors under Rule 23(b)(3)(A)–(D), the Court finds that class members' potential interests in individually controlling the prosecution of separate actions and the potential difficulties in managing the class action do not outweigh the desirability of concentrating this matter in one litigation. *See* Fed.R.Civ.P. 23(b)(3)(A), (C), (D). The Court is not aware of any litigation concerning the controversy already commenced by or against members of the class. *See* Fed.R.Civ.P. 23(b)(3)(C). Therefore, the Court finds that the class may be certified under Rule 23(b)(3).

### E. *Rule 23(g)—Appointment of Class Counsel*

Under Rule 23(g), "a court that certifies a class must appoint class counsel." Fed. R.Civ.P. 23(g)(1). As previously stated in this Order, the Court is satisfied by the declarations of Plaintiff's counsel, that the Newport Trial Group is adequate and thus may be appointed as Class Counsel in this case.

### III. CONCLUSION

For the reasons set forth above the Court GRANTS Plaintiff's Motion for Class Certification.

(1) The following Rule 23(b)(2) class is CERTIFIED under the California Unfair Competition Law, under the California Legal Remedies Act, and for common-law fraud, to the extent that the class seeks injunctive relief, actual damages, and punitive damages: "All persons who are domiciled or reside in California, who purchased Children's Coldcalm for personal use at any time during the four years preceding the filing of this Complaint."

(2) The following Rule 23(b)(3) class is CERTIFIED under the California Unfair Competition Law, under the California Legal Remedies Act, and for common-law fraud: "All persons who are domiciled or reside in California, who purchased Children's Coldcalm for personal use at any time during the four years preceding the filing of this Complaint."

(3) Plaintiff Gina Delarosa is APPOINTED as class representative.

(4) Plaintiff's counsel of record, attorneys Scott J. Ferrell and Ryan M. Ferrell, of the law firm Newport Trial Group, are APPOINTED as class counsel.

(5) Because the 23(b)(3) class is inclusive of all of the subclasses certified under 23(b)(2), the potential members of the 23(b)(2) subclasses shall also be granted the same rights of notice and ability to opt out of the class action as those normally given to potential members of a 23(b)(3) class. The Court directs the parties to meet-and-confer, and to submit an agreed-on form of class notice that will advise class members of, among other things, the damages sought and their rights to intervene, opt out, submit comments, and contact class counsel. The parties shall also jointly submit a plan for dissemination of the proposed notice. The parties will shall work together to generate a class list to be used in disseminating class notice. The proposed notice and plan of dissemination shall be filed with the Court on or before **September 30, 2011.**