**Kelley BRUNO, on Behalf of Herself and All Others Similarly Situated, Plaintiff,**

v.

**QUTEN RESEARCH INSTITUTE, LLC, and Tishcon Corp., Defendants.**

**No. SACV 11–00173 DOC(Ex).**

United States District Court, C.D. California, Southern Division.

Nov. 14, 2011.

Courtland W. Creekmore, Gregory S. Weston, John Joseph Fitzgerald, IV, Melanie Rae Persinger, The Weston Firm, Margarita Salazar, Law Offices of Ronald A. Marron, APLC, Ronald A. Marron, Ronald A. Marron Law Offices, San Diego, CA, for Plaintiff.

Evan S. Strassberg, Vantus Law Group, P.C., Jason M. Kerr, Salt Lake City, UT, Helen Chae MacLeod, Newport Beach, CA, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

DAVID O. CARTER, District Judge.

Before the Court is a Motion for Class Certification filed by Plaintiff Kelley Bruno ("Plaintiff"). (Dkt. 47) (also under seal at Dkt. 61). After considering the moving papers and oral argument, the Court GRANTS IN PART Plaintiff's motion for class certification. The Court DENIES the motion only to the extent that Plaintiffs seek to include within the class those persons who were exclusively exposed to the "3X" representation.

## I. Background

Plaintiff filed a Complaint on January 31, 2011. (Dkt. 1). The gravamen of Plaintiff's complaint is that she purchased a liquid product which contained the allegedly material misrepresentation that its active ingredient had "6X BETTER ABSORPTION" and was "6 Times More Effective" than the equivalent active ingredient in competing brands. The active ingredient at issue is the CoQ10 enzyme, brand name Qunol ("Qunol"), which is consumed for medicinal purposes, including as a dietary supplement. Plaintiff alleges that she bought the liquid product that contained these "6X" representations about Qunol from a Costco store in California.[1] See Compl. ¶ 11.

### a. Defendants

Plaintiff alleges, and Defendants do not appear to dispute, that both Defendants Tishcon Corporation ("Tishcon") and Quten Research Institute LLC ("Quten") create or approve the marketing at issue here, including the "6X" representations. Tishcon is the exclusive manufacturer of Qunol and owns the patent to Qunol's formulation and manufacturing process. Quten is the designated "marketing company" for Qunol and holds the trademark on the Qunol brand name. In addition, Raj Chopra—Tishcon's Founder, CEO, Chief Scientific Officer, and Chairman—reviews all health-related statements made by Quten about Qunol before they are included on Qunol's label. All Quten statements about Qunol are based on the work of Chopra. See Mot 3.

### b. Defendants' liquid product and "6X" representations

From January 2009 through April 2010, Defendants marketed a liquid product with the representation that its Qunol had 6 times better absorption and effectiveness than the

---

1. The Complaint refers to both "Qunol Liquid CoQ10 and Qunol Ultra CoQ10 (collectively "Qunol CoQ10")" and thus it is unclear from the complaint whether Plaintiff bought and relied on the representations in the liquid or gelcap product. However, in her deposition, Plaintiff clarified that she only bought the liquid product. Strassberg Decl., Ex. E (Bruno Dep.) at 67:25–68:3.

equivalent enzyme in competing brands. *See* Quten Opp'n 3. Specifically, the liquid product contained representations such as: (1) "6X Better Absorption than Regular CoQ10"; (2) "Increase the Effectiveness of Your CoQ10 by up to 600%"; (3) is "6 Times More Effective." Mot. 2.

Defendants ceased making these representations in April at Costco's request and after the Better Business Bureau's National Advertising Division concluded that Defendants' study was insufficient to support the "6x Better Absorption" claim. *Id.* at 5–6.

#### c. Defendants' gelcap product and "3X" representations

Since 2007, Defendants have marketed a gelcap product with the representation that its Qunol had 3 times better absorption than the equivalent enzyme in competing brands. *See* Quten Opp'n 4. Specifically, the gelcap product contains representations such as: (1) "3X Better Absorption"; and (2) "300% Better Absorption."

#### d. Defendants' liquid and gelcap product shared representations

In addition to specific numerical representations about absorption, the labels of both the liquid and gelcap product have contained supporting graphics that illustrate their claims and slogans like "Best Value!" *See* Reply 5–6.

#### e. Plaintiff's Motion for Class Certification

On September 19, 2011, Plaintiff filed the instant Motion for Class Certification. (Dkt. 47). Defendants Quten and Tishcon filed separate, but essentially duplicative Oppositions that make identical legal arguments using exceedingly similar factual statements. *See* Quten Opp'n (Dkt. 55); Tishcon Opp'n (Dkt. 58). Thus, for convenience, this Court primarily cites Defendant Quten's Opposition in its analysis.

Plaintiff seeks class certification of for violation of the following California laws:

(1) Unfair Competition Law ("UCL"), Cal. Bus. & Prof.Code, § 17200 et seq.

(2) False Advertising Law ("FAL"), *id.* § 17500 et seq.

(3) Consumer Legal Remedies Act ("CLRA"), Cal. Civ.Code § 1750 et seq.

(4) Breach of express warranty,

Plaintiff seeks to certify the following class:

> All persons, excluding officers, directors, and employees of Quten Research Institute LLC or Tishcon Corp. and their immediate families, who on or after January 31, 2007 purchased Qunol CoQ10 in the United States for personal or household use rather than resale or distribution, in packaging stating that Qunol offers multiple times better absorption or effectiveness.

### II. Legal Standard

Federal Rule of Civil Procedure 23 governs class actions. Fed.R.Civ.P. 23. A party seeking class certification must demonstrate the following prerequisites: "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992) (citing Fed.R.Civ.P. 23(a)). The party may not rest on mere allegations, but must provide facts to satisfy these requirements. *Doninger v. Pac. Northwest Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir.1977) (citing *Gillibeau v. Richmond*, 417 F.2d 426, 432 (9th Cir.1969)).

After satisfying the four prerequisites of numerosity, commonality, typicality, and adequacy, a party must also demonstrate either: (1) a risk that separate actions would create incompatible standards of conduct for the defendant or prejudice individual class members not parties to the action; or (2) the defendant has treated the members of the class as a class, making appropriate injunctive or declaratory relief with respect to the class as a whole; or (3) common questions of law or fact predominate over questions affecting individual members and that a class action is a superior method for fairly and efficiently adjudicating the action. Fed. R.Civ.P. 23(b)(1–3).

■ The decision to grant or deny a motion for class certification is committed to the trial court's broad discretion. *Bateman v. American Multi–Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir.2010). However, a party seek-

ing class certification must affirmatively demonstrate compliance with Rule 23—that is, the party must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact. *Wal-Mart Stores, Inc. v. Dukes,* — U.S. —, 131 S.Ct. 2541, 2550, 2551, 180 L.Ed.2d 374 (2011). This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.*

### III. Standing

█ Standing has three elements: (1) an "injury in fact," (2) a "causal connection between the injury and the conduct complained of," and (3) redressability, meaning that the injury is likely capable of being redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In a class action, standing is satisfied if "at least one named plaintiff meets the requirements." *Bates v. UPS,* 511 F.3d 974, 985 (9th Cir. 2007).

Defendants contend that the class should not be certified because either Plaintiff or the unnamed class members lack a concrete injury caused by Defendants and thus standing is not satisfied. The Court rejects Defendants' arguments and concludes that Rule 23, not standing, is the appropriate basis by which to evaluate whether to certify this class.

### a. Plaintiff Has Standing Regarding the Product Marketed as Having "6X BETTER ABSORPTION" and Plaintiff's Ability to Represent a Class Exposed to the "3X" Representation Should Be Analyzed Under Rule 23, Not Standing

Plaintiff clearly has standing to bring her claims arising from her purchase of the liquid product that Defendants marketed using alleged material representations that it has "6X BETTER ABSORPTION" and is "6 Times More Effective."[2] Defendants contend, however, that Plaintiff lacks standing to bring claims arising from any purchase of the gelcap product because it differs from the liquid product plaintiff purchased both in form and in the type of material misrepresentations made, namely because it was marketed as having "300%" and "3X BETTER ABSORPTION." Quten Opp'n 10–11. Specifically, Defendants argue that Plaintiff's failure to purchase the gelcap product negates Plaintiff's standing to sue for injuries arising from misrepresentations of that product, and that Plaintiff's lack of standing prevents her from representing a class that were exposed to representations that the gelcap product had "300%" and "3X BETTER ABSORPTION." *Id.*

█ The Court agrees with Plaintiff that treatises and the vast majority of persuasive authority indicate that Defendants' legal argument is flawed. District courts in California routinely hold that the issue of whether a class representative "may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." *Greenwood v. CompuCredit Corp.,* No. 08–04878 CW, 2010 WL 4807095, at *3 (N.D.Cal. Nov. 19, 2010); *Arevalo v. Bank of Am. Corp.,* 850 F.Supp.2d 1008, 2011 WL 1195973, at *4 (N.D.Cal. Mar. 29, 2011). Treatises and other circuits reach the same conclusion. *See Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410, 423 (6th Cir.1998) (holding that, because plaintiff had standing to sue for injury arising from his own benefit plan, his

---

2. The Court is not persuaded by Defendants' argument that Plaintiff has produced inadequate evidence of injury arising from her purchase of the liquid product and thus lacks standing. Defendants contend that the liquid product with its "6X" representation is more costly than competitors' gelcap products because of the former's liquid *form,* not the representation that Defendants' product is six times more effective than its competitors. However, the Court agrees with Plaintiff that this dispute over how to measure the premium for Defendants' product is a dispute over the *merits,* specifically the extent of *damages,* and not one over whether Plaintiff has *standing* to bring her claim. *See Brazil v. Dell, Inc.,* 2010 U.S. Dist. LEXIS 42877, at *7 (N.D.Cal. Mar. 29, 2010) (certifying class where plaintiffs proposed measuring damages based on additional amount defendant was able to charge due to misrepresentations). Furthermore, Plaintiff's allegations of a premium are supported by her expert. *See* Persinger Decl.

ability to represent class members with different benefit plans should be analyzed under Rule 23, not standing); 7AA Wright et al., Federal Practice and Procedure (3d 2005) § 1785.1.

■ Thus, this Court concludes that Plaintiff has standing based on her purchase of Defendants' liquid product represented as having "6X BETTER ABSORPTION" and will analyze solely under Rule 23 whether to certify a class that includes purchasers of the gelcap products with its attendant representation of "3X BETTER ABSORPTION."

### b. Defendants Have Failed to Show that the Some of the Putative Class Members Lack Standing

Defendants next argue that, even if Plaintiff has standing, the class should not be certified because the *unnamed* class members lack standing. Specifically, Defendants contend that the unnamed class members lack standing because the question of whether each member has suffered a concrete injury requires a "fact intensive, individualized inquiry." *See* Quten Opp'n 11–12. Defendants cite four unpublished cases from this district for the proposition that a class may not be certified where the plaintiff has "not demonstrated that each member of the putative class had suffered an injury." *Id.* at 12. As with Defendants' other argument regarding standing, discussed in Section III(a), the Court agrees with Plaintiff that the recent Ninth Circuit case *Stearns v. Ticketmaster,* treatises, and the vast majority of persuasive authority indicate that Defendants' legal argument is flawed.[3]

In *Stearns,* the Ninth Circuit held that the district court abused its discretion in denying certification to a class regarding claims brought under the California UCL, the same statute under which Plaintiff now brings one of her claims. *See Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, 1020–21 (9th Cir.2011). First, while analyzing the district court's dismissal under Rule 23, the Ninth Circuit held that the district court erred in concluding that class members' "individualized proof of

reliance and causation would be required" for liability under the California UCL because a recent California Supreme Court decision held otherwise. *Id.* at 1020. Specifically, the California UCL imposes an objective test that requires a plaintiff "only to show that members of the public are likely to be deceived" by defendant's representations about its product. *Id.* at 1020 (quoting *In re Tobacco II Cases,* 46 Cal.4th 298, 93 Cal. Rptr.3d 559, 207 P.3d 20 (2009) as holding that "relief under the UCL is available without individualized proof of deception, reliance and injury"). Next, the Ninth Circuit rejected the defendants' argument that the California UCL's objective test would allow plaintiffs and class members to circumvent the injury requirements for Article III standing. *Id.* at 1020–21. The Ninth Circuit reasoned that a concrete injury sufficient for Article III standing was shown by the California UCL's requirement that the plaintiff and class members suffer an economic loss caused by the defendant, namely, the purchase of defendant's product containing misrepresentations. *Id.*

First, just as the *Stearns* defendants argued that class certification should be denied because "individualized proof of reliance and causation would be required" under the California UCL for each class member, Defendants here argue that a "fact intensive, individualized inquiry" into whether a concrete injury exists would be required for each class member. *Compare id.* at 1020 *with* Quten Opp'n 11–12. And, just as the Ninth Circuit held, this Court concludes that the California UCL does not require such an inquiry; instead, it imposes an objective test that requires Plaintiff "only to show that members of the public are likely to be deceived" by Defendants' representations about the product. *See Stearns,* 655 F.3d 1013, 1020. Finally, as the Ninth Circuit concluded, the California UCL's objective test does not circumvent standing requirements; instead, the law requires Plaintiff and class members to suffer an economic injury caused by Defendants, namely, the purchase of the

---

**3.** Perhaps indicative of Defendants' own uncertainty about the merits of their argument regarding putative class members' standing, Defendants state that their argument is further "explained" in the part of the Opposition that addresses whether Rule 23 is satisfied. Quten Opp'n 12.

liquid and or gelcap products containing Defendants' misrepresentations. *See id.*

Second, because Plaintiff's other claims under the FAL and CLRA rely on the same objective test, that is, whether "members of the public are likely to be deceived," these other claims also do not require individual analysis of class members' injury nor negate such class members' Article III standing. *See In re Tobacco II Cases,* 46 Cal.4th 298, 312, 93 Cal.Rptr.3d 559, 207 P.3d 20 (2009); *see also Yumul v. Smart Balance, Inc.,* 733 F.Supp.2d 1117, 1125 (C.D.Cal.2010) ("California courts have held that reasonable reliance is *not* an element of claims under the UCL, FAL, and CLRA.").

Third, the majority of authority indicates that it is improper for this Court to analyze unnamed class members' Article III standing where, as here, Defendants do not successfully challenge the putative class representative's standing. *See Lewis v. Casey,* 518 U.S. 343, 395, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (Souter, J., concurring) (class certification "does not require a demonstration that some or all of the unnamed class could themselves satisfy the standing requirements for named plaintiffs."). As the Ninth Circuit observed in *Stearns,* this Circuit has repeatedly held that "[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements.... Thus, we consider only whether at least one named plaintiff satisfies the standing requirements." *See Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, 1021 (9th Cir.2011) (quoting *Bates v. United Parcel Serv., Inc.,* 511 F.3d 974, 985 (9th Cir.2007) (en banc)). Other district courts in California routinely reach the same conclusion to hold that standing "is assessed solely with respect to class representatives, not unnamed members of the class." *See Zeisel v. Diamond Foods, Inc.,* 2011 WL 2221113, at *4, 2011 U.S. Dist. LEXIS 60608, at *14 (N.D.Cal. June 7, 2011); *Greenwood v. Compucredit Corp.,* 2010 WL 4807095, at *3, 2010

U.S. Dist. LEXIS 127719, at *10–11 (N.D.Cal. Nov. 19, 2010) ("Plaintiffs are not required to establish absent class members' individual reliance and personal standing"); *Chavez v. Blue Sky Natural Bev. Co.,* 268 F.R.D. 365, 376 (N.D.Cal.2010) ("unnamed class members in an action under the [California] Unfair Competition Law ("UCL") . . . are not required to establish standing.").

Finally, Defendants' proposed rule that denial of class certification may be based on an analysis of unnamed class members' standing rather than Rule 23 is supported only by district court cases that acknowledge a lack of authority for this proposition and unpersuasively interpret *Stearns.*[4] For example, the two cases cited by Defendant which expressly hold that unnamed class members must satisfy standing also acknowledge that this is a new proposition for which there is no supporting Ninth Circuit authority. *See Webb v. Carter's Inc.,* 272 F.R.D. 489, 497 (C.D.Cal. 2011) (Feess, J.) ("[T]here is no controlling authority requiring absent class members, as opposed to the named plaintiffs, to satisfy Article III's standing requirements."); *O'Shea v. Epson Am., Inc.,* 2011 WL 4352458, at *10, 2011 U.S. Dist. LEXIS 105504, at *28–31 (C.D.Cal. Sept. 19, 2011) (Gutierrez, J.) ("[W]hile the Ninth Circuit has clearly spoken to the question of whether a named plaintiff must have standing . . . this precedent does not compel the conclusion that a class may be certified where members lack standing."). *Webb* was issued before the Ninth Circuit's ruling in *Stearns,* and thus did not have the benefit of the Ninth Circuit's analysis. *O'Shea* both factually distinguishes *Stearns* and argues that, by *addressing* the issue of standing, "if anything, *Stearns* suggests that absent class members do have to satisfy Article III's [standing] requirements." *O'Shea,* 2011 WL 4352458, at *9–10, *9 n. 8, 2011 U.S. Dist. LEXIS 105504, at *28–29, *29 n. 8. However, this analysis of *Stearns* gives too little weight to

---

4. The other cases cited by Defendant either do not expressly hold that unnamed class members' standing may be evaluated by the court in a class certification or are otherwise factually distinguishable. For example, Defendants rely on *Burdick,* but this case based its decision on the claims being unripe, an argument not advanced

here. *See Burdick v. Union Security Insurance Company,* 2009 WL 4798873, 2009 U.S. Dist. LEXIS 121768 (C.D.Cal.); *see also Greenwood v. Compucredit Corp.,* 2010 WL 4807095, at *3–4, 2010 U.S. Dist. LEXIS 127719, at *10–11 (N.D.Cal. Nov. 19, 2010) (distinguishing *Burdick*).

that decision's extensive discussion of Ninth Circuit precedents holding that standing focuses "on the representative party, not all of the class members, and has done so for many years." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir.Cal.2011). Given the reiteration of this rule in *Stearns* and the absence of any controlling authority to the contrary, this Court concludes that the Ninth Circuit in *Stearns* did not subtly announce a new rule requiring courts to analyze unnamed class members' standing.

In sum, the majority of authority militates in favor of the following rule, which this Court adopts: where the class representative has established standing and defendants argue that class certification is inappropriate because unnamed class members' claims would require individualized analysis of injury or differ too greatly from the plaintiff's, a court should analyze these arguments through Rule 23 and not by examining the Article III standing of the class representative or unnamed class members.

## IV. Class Certification

Having held that Rule 23 is the appropriate vehicle for analysis, the Court next concludes that Plaintiff can satisfy Rule 23(a) regarding a class of purchasers of the product represented as having "6X BETTER ABSORPTION" and being "6 Times More Effective," but not the product marketed as having "300%" and "3X BETTER ABSORPTION." As the parties did in their briefs, this Court analyzes Plaintiff's four legal claims together for the purpose of class certification because they all share substantially similar elements and are based on the same facts, namely the purchase of Defendants' products that were marketed with alleged misrepresentations. *See Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 588–89 (C.D.Cal.2011) (analyzing class certification on UCL, CLRA, and common-law fraud claims together because elements are similar).

### a. Class Certification Under Rule 23(a)

#### i. Numerosity

■ Numerosity, the first prerequisite of class certification, requires that the class be "so numerous that joinder of all members is impractical." Fed.R.Civ.P. 23(a)(1). A proposed class of at least forty members presumptively satisfies the numerosity requirement. *See Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir.1982), *vacated on other grounds by County of Los Angeles v. Jordan*, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982); *Slaven v. BP America, Inc.*, 190 F.R.D. 649, 654 (C.D.Cal.2000).

Here, Defendants do not dispute numerosity and their assertions in their Opposition confirm that this prerequisite is satisfied. Specifically, Defendants state that, during part of the class period, Defendants "shipped approximately 220,000 units of the Liquid product" with the alleged material misrepresentation "on the package." *See* Quten Opp'n (Dkt. 55) 3. Thus, the Court concludes that the proposed class contains at least forty members. *See In re HiEnergy Techs., Inc. Sec. Litig.*, 2006 WL 2780058, at *3, 2006 U.S. Dist. LEXIS 99265, at *7 (C.D.Cal. Sept. 25, 2006) ("Where the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied.").

#### ii. Typicality

■ The typicality requirement demands that a named plaintiff's claims be "reasonably co-extensive with those of absent class members," although "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The purpose of the typicality requirement is to assure that the interests of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508.

#### 1. Plaintiff is not typical of those class members exposed to the misrepresentation that the product is "3X better absorbent"

■ Defendants advance several arguments, only one of which this Court finds persuasive. Specifically, the Court concludes that Defendant is correct that Plaintiff is atypical of the class to the extent that the class includes consumers who were exposed to the representation that the product had "3X BETTER ABSORPTION."

The Court is persuaded by Defendants' argument that Plaintiff has failed to show she is typical of those class members exposed to the representation that Defendants' product is "3X" more absorbent because Plaintiff was exposed only to the representation that the product has "6X BETTER ABSORPTION" and is "6 Times More Effective." Although Plaintiff may be correct that the same evidence can be used to prove the falsity of both claims, it is also possible that the evidence will reveal that the "6X" claim is a misrepresentation, but the "3X" statement is true. Given this possibility, the present case is distinguishable from those cases on which Plaintiff relies where "a *single* misrepresentation ... was made *identically* to all potential class members." *See Delarosa v. Boiron, Inc.,* 275 F.R.D. 582, 589 (C.D.Cal. 2011) (emphasis added).

Thus, the Court limits the class to exclude those who were only exposed to the representation that the product has "300%" or "3X BETTER ABSORPTION."

### 2. Plaintiff is typical of those class members exposed to the misrepresentation that the product is "up to 6X better absorbent"

■ The Court concludes that Plaintiff is typical of those class members exposed to the same misrepresentation that Plaintiff experienced, namely that Defendants' product is "up to 6X" more absorbent. The Court rejects Defendants' other arguments that Plaintiff is atypical because she: (1) will be subject unique defenses; or (2) is not credible.

First, the Court finds no merit in Defendants' argument that Plaintiff will be subject to a unique defense because she had reasons other than the representation for purchasing the product. As this Court has discussed previously in Section III(b), a plaintiffs' individual experience with the product is irrelevant where, as here, the injury under the UCL, FAL, and CLRA is established by an objective test. Specifically, this objective test states that injury is shown where the consumer has purchased a product that is marketed with a material misrepresentation, that is, in a manner such that "members of the public are likely to be deceived." *See In*

*re Tobacco II Cases,* 46 Cal.4th 298, 312, 93 Cal.Rptr.3d 559, 207 P.3d 20 (2009); *see also Yumul v. Smart Balance, Inc.,* 733 F.Supp.2d 1117, 1125 (C.D.Cal.2010).

The Court similarly finds no merit in Defendants' argument that Plaintiff will be subject to a unique defense because she "misread" the representation. Defendants misstate Plaintiff's testimony in arguing that Plaintiff's failure to see the "up to" language in the phrase "up to 6X BETTER ABSORPTION" means that she "misread" the misrepresentation. As Plaintiffs cogently argue, to the extent that the "up to" disclaimer is in fine print, Defendants have no defense against this claim. *See Williams v. Gerber Prods. Co.,* 552 F.3d 934, 939 (9th Cir.2008) (misleading claims on a food's label were not immunized by contrary information in fine print); *see* Weston Decl., Ex. A at 1 (image of the label at issue).

■ Next, Defendants argue that Plaintiff is not credible because, when deposed for this case, she did not recall the name of product involved a *different* class action in which she is a plaintiff and she appeared confused about the name of the suit to which she was a party. Defendants cite absolutely no authority for this proposition. The Court is troubled that Defendants have devoted valuable pages in their Opposition to an apparent a smear campaign that paints Plaintiff as a "serial plaintiff" because she is litigating two class actions. *See* Opp'n at 17. As Plaintiff prudently notes, this Court has already held that being a serial plaintiff is not a basis for finding that a plaintiff is atypical. *See Holloway v. Full Spectrum Lending,* 2007 U.S. Dist. LEXIS 59934 (C.D.Cal. June 26, 2007) (Carter, J.) (rejecting argument that a "professional plaintiff who is closely tied to her lawyers" was inadequate and further finding "repeat litigants may be better able to monitor the conduct of counsel, who as a practical matter are the class's real champions"); *accord Tsirekidze v. Syntax–Brillian Corp.,* 2009 WL 2151838, at *4–5, 2009 U.S. Dist. LEXIS 61145, at *15 (D.Ariz. July 17, 2009).

Thus, the Court concludes that Plaintiff is typical of a class composed of consumers

exposed to the same misrepresentation that Plaintiff experienced, namely that the product has "6X BETTER ABSORPTION" or is "6 Times More Effective." However, the Court also concludes that Plaintiff if atypical of a class composed of consumers exposed only to the representation that the product has "300%" and "3X BETTER ABSORPTION." Thus, the Court DENIES Plaintiff's motion for certification to the extent that Plaintiffs seek to include within the class those consumers who were exposed to the "3X" representation.

### iii. Commonality

Because the Court holds that Plaintiff is atypical of a class composed of consumers exposed to only the "3X" representation, the Court considers in this section only whether questions of law and fact are common to the more limited class.

■ The "commonality" prerequisite mandates that there be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Commonality requires that class members share a common injury and this injury is "capable of classwide resolution," meaning that determination of the claims' "truth or falsity will resolve an issue that is central to [the claims'] validity." *Wal–Mart Stores, Inc. v. Dukes,* —— U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir.1998). As the Ninth Circuit has explained, "[t]he commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3) [predominance]." *Id.*

Defendants contend that the proposed class is over-inclusive because it includes consumers who *"may* not have been misled at all" or who purchased the product for reasons of other than the alleged misrepresentations. Quten Opp'n 14 (emphasis added) (citing without analogy to *Stearns v. Ticketmaster Corp.,* 655 F.3d 1013 (9th Cir.2011)). Defendants' argument is somewhat unclear

but appears to be that some class members may lack any injury.

■ As discussed twice already, California has recognized that an injury exists under the UCL, FAL, and CLRA where a consumer has purchased a product that is marketed with a material misrepresentation, that is, in a manner such that "members of the public are likely to be deceived." *See In re Tobacco II Cases,* 46 Cal.4th 298, 312, 93 Cal.Rptr.3d 559, 207 P.3d 20 (2009); *see also Yumul v. Smart Balance, Inc.,* 733 F.Supp.2d 1117, 1125 (C.D.Cal.2010) ("California courts have held that reasonable reliance is not an element of claims under the UCL, FAL, and CLRA."). Defendants' argument is unavailing because it urges this Court to abandon this objective test and instead contemplate hypothetical class members' individual interaction with the product. *See In re Tobacco II Cases,* 46 Cal.4th 298, 327, 93 Cal.Rptr.3d 559, 207 P.3d 20 (2009) ("[A] presumption, or at least an inference, of reliance arises whenever there is a showing that a misrepresentation was material[, meaning] if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question."). Other courts in this district have rejected Defendants' argument because the fact that "some consumers purchased the [product] for other reasons does not defeat a finding that" the product was marketed with a material misrepresentation, which *per se* establishes an injury. *See Johnson v. General Mills, Inc.,* 276 F.R.D. 519 (C.D.Cal.2011) (rejecting defendants' analogy to *Stearns* ); *see also Delarosa v. Boiron,* 275 F.R.D. 582, 586 (C.D.Cal.2011);

■ Defendants do not dispute that the claims at issue here arise from the same facts, namely the purchase of products that were marketed with alleged material misrepresentations. These same facts give rise to the same legal theories for liability under the UCL, FAL, CLRA, and breach of warranty claims. The determination of these claims' "truth or falsity"—namely, whether Defendants' products were marketed using misrepresentations and whether these misrepresentations were material—"will resolve an issue that is central to [the claims'] validity." *Es-*

pecially given the relatively lenient requirements for commonality preconditions of Rule 23(a)(2), this Court concludes that this standard is met where there are shared legal issues and facts. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998).

### iv. Adequacy of the Named Representative

■■■■ An adequate representative is one who will "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Due process requires that absent class members have an adequate representative. *See Hansberry v. Lee*, 311 U.S. 32, 43, 61 S.Ct. 115, 85 L.Ed. 22 (1940). A representative is adequate where (1) there is no conflict of interest between the representative and its counsel and absent class members, and (2) the representative and its counsel will "pursue the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020 (internal citations and quotations omitted).

■■■■ This Court is not persuaded by Defendant's argument that Plaintiff is not credible because the Complaint alleges that she relied on a misrepresentation she never saw. *See* Quten Opp'n 16. The Complaint alleges that Plaintiff "read and relied on" the misrepresentation that the product is "3X BETTER ABSORPTION." Compl. ¶ 33. Defendants contend that this representation appears only on the gelcap product and that, because Plaintiff bought the liquid product, the Complaint must therefore be false. *See* Quten Opp'n 16. However, considering Plaintiff's testimony as a whole, Defendants have mischaracterized the ostensible discrepancy between her testimony and the Complaint. When asked is she had seen the gelcap product, Plaintiff responded "I don't know." *See* Strassberg Decl., Ex. E (Bruno Dep.) 68:12. Plaintiff did, however, state that she purchased the liquid product based on "advertising," and such advertising could include the gelcap packaging with its "3X" representation. *See id.* at 66:22. While

Plaintiff's statement may not be enough to state a claim regarding the "3X" representation, it hardly betrays a lack of familiarity regarding the facts of this case. *See Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 267 (N.D.Cal.2011) ("Given that the threshold of knowledge required to qualify a class representative is low; a class representative will be deemed inadequate only if 'startlingly unfamiliar' with the case.").

### v. Conclusion

For the reasons stated above, the Court concludes that Plaintiff has satisfied Rule 23(a) regarding a class composed of consumers exposed to the same misrepresentation that Plaintiff experienced, namely that Defendants' product is "up to 6X" more absorbent. However, Plaintiff has not demonstrated that she is typical of a class of consumers exposed to the "3X" misrepresentation, and thus the Court DENIES Plaintiff's motion to the extent it seeks to limit the class to exclude those exposed only to the "3X" misrepresentation.

### b. Class Certification under Rule 23(b)(3)

After satisfying the requirements of Rule 23(a), the proposed class must also satisfy at least one of the three requirements listed in Rule 23(b). The Court has concluded that the prerequisites of Rule 23(a) are satisfied so long as the class excludes those exposed only to the "3X" misrepresentation. Thus, the Court turns to the requirements of Rule 23(b)(3): whether common questions of law or fact predominate among class members and whether the class device offers a superior means of resolving the dispute. Because the Court concludes that the requirements of Rule 23(b)(3) are met, the Court refrains from analyzing this case under Rule 23(b)(2).[5]

■■■■ Defendants offer no real argument regarding certification under Rule 23(b)(3) and instead urge this Court, once again, to

---

5. The Court refrains from this analysis given the lack of clarity regarding whether the Supreme Court's recent decision in *Wal–Mart Stores, Inc. v. Dukes,* —— U.S. ——, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) has abrogated the Ninth Circuit's interpretation of the Rule 23(b)(2) requirements.

consider the standing of the unnamed class members.[6] *See* Quten Opp'n 21. As this Court has resolved that issue in Plaintiff's favor, the Court will not address that argument again here.

### i. Predominance

The predominance inquiry "tests whether proposed class actions are sufficiently cohesive to warrant adjudication by representation," a standard "far more demanding" than the commonality requirement of Rule 23(a). *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623–24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). However, predominance is also "readily met in certain cases alleging consumer ... fraud," *id.* at 625, 117 S.Ct. 2231.

■ The Court concludes that the central questions in this case predominate over any individual question. Here, the central predominating question is whether Defendants' marketing statements about "up to 6X BETTER ABSORPTION" or "effectiveness" is materially misleading. Courts in California routinely find that this inquiry focuses on the Defendants' representations about the product and applies a single, objective "reasonable consumer" standard—not, as Defendants urge, a subjective test that inquires into each class members' experience with the product. *See e.g., Mazza v. Am. Honda Motor Co.,* 254 F.R.D. 610 (C.D.Cal.2008) (certifying class exposed to misrepresentations in advertising in violation of UCL, FAL, and CLRA); *Faigman v. AT & T Mobility LLC,* 2007 WL 2088561, 2007 U.S. Dist. LEXIS 52192 (N.D.Cal. July 17, 2007) (denying motion to dismiss UCL, FAL, and CLRA claims in putative class action); *Smith v. Wells Fargo Bank, N.A.,* 135 Cal.App.4th 1463, 38 Cal. Rptr.3d 653 (2005) (reversing dismissal of UCL, FAL, and CLRA claims in class action).

Additionally, the class members share the following questions: (1) whether Defendants communicated a representation, through packaging and other marketing, that the product offers "up to 6X" times more absorption and effectiveness than competing products; (2) if so, whether that representation was material to individuals purchasing the product; (3) whether the representation was truthful; and (4) the proper method for calculating damages. *See Johnson v. Gen. Mills, Inc.,* 275 F.R.D. 282, 287 (C.D.Cal. 2011).

### ii. Superiority

■ The second prong of the analysis under Rule 23(b)(3) also requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Given the small size of each class member's claim, class treatment is not merely the superior, but the only manner in which to ensure fair and efficient adjudication of the present action. *See Pecover v. Elec. Arts Inc.,* 2010 U.S. Dist. LEXIS 140632, at *68 (N.D.Cal. Dec. 21, 2010) ("[T]he modest amount at stake for each purchaser renders individual prosecution impractical. Thus, class treatment likely represents plaintiffs' only chance for adjudication."). Indeed, "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device." *Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). *See also Ballard v. Equifax Check Servs., Inc.,* 186 F.R.D. 589, 600 (E.D.Cal.1999) ("Class action certifications to enforce compliance with consumer protection laws are 'desirable and should be encouraged.' "). Furthermore, each member of the class pursuing a claim individually would burden the judiciary, which is contrary to the goals of efficiency and judicial economy advanced by Rule 23.

---

6. Defendants also argue that the alleged misrepresentations were not material because its sales increased after removing the misrepresentations. Quten Opp'n 23. This argument is unavailing because it goes to proof of the merits of Plaintiff's claim, not to whether common questions predominate or whether the class action is a superior vehicle for resolving the dispute. *See*

*Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1173 (9th Cir.2010) (holding that defendant's arguments regarding plaintiff's evidence of a common defect relate to the merits of the claim and do not overlap with the predominance test in Rule 23(b)(3)); *Delarosa v. Boiron, Inc.,* 275 F.R.D. 582, 594 (C.D.Cal.2011) (same).

*See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir.2009) ("The overarching focus remains whether trial by class representation would further the goals of efficiency and judicial economy."); *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 594–95 (C.D.Cal.2011).

Thus, the Court concludes that Plaintiff has satisfied the requirements of Rule 23(a) and (b)(3) so long as the class excludes those exposed only to the "3X" misrepresentation. Because the Court reaches this conclusion regarding Rule 23(b)(3) under established law, it does not consider whether the class may be certified under Rule 23(b)(2).

### c. California Law Applies to the Nationwide Class

▮ A court must ensure that the certification of a nationwide class under the laws of a single state comports with due process. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). Under California law, once Plaintiff makes this showing that due process is satisfied, the burden shifts to Defendants to show that the laws of another state should apply.[7] *See Wash. Mut. Bank, FA v. Superior Court,* 24 Cal.4th 906, 921, 103 Cal.Rptr.2d 320, 15 P.3d 1071 (2001); *Parkinson v. Hyundai Motor Am.,* 258 F.R.D. 580, 589 (C.D.Cal. 2008).

### i. Applying California law to a nationwide class comports with the Due Process Clause

▮ Application of a single state's law to a nationwide class comports with Due Process where the state has a "significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class, contacts creating state interests, in order to ensure that choice of [substantive state] law is not arbitrary or unfair." *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 818, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) (citation omitted). However, thus requirement creates only "modest restrictions" on the application of forum law to prevent the application of state substantive law "only casually or slightly related to the litigation." [8] *Id.* at 818–19, 105 S.Ct. 2965.

▮ Defendants have had significant contact or at least a significant aggregation of contacts with California relating to the claims of this case by maintaining Quten corporate headquarters in California during the class period and selling approximately 30% of the allegedly misrepresented products in California. *See* Mot. at 22. Defendants do not dispute these facts, but instead argue that due process would be violated because the products and marketing materials were produced outside of California.[9] *See* Quten Opp'n at 22. Defendants can not immunize themselves from California law simply by locating *production* of the allegedly offending materials outside the state, but continuing to *sell* those offending materials to large numbers of Californians. *See Pecover v. Elec. Arts Inc.,* 2010 U.S. Dist. LEXIS 140632, at *49–50 (N.D.Cal. Dec. 21, 2010) (rejecting similar argument because courts "have

7. This Court has diversity jurisdiction under 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act). *See* Compl. ¶ 6 (stipulating that more than two-thirds of the class members reside in states other than the state of which Defendants are citizens). Because a federal court with diversity jurisdiction must apply the choice-of-law rules of the forum state, this Court follows California's choice-of-law rules regarding parties' burdens in deciding whether to apply California law to Plaintiff's claims. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

8. In *Shutts*, the Supreme Court engaged in a two-step process to analyze whether the state law comported with due process: (1) first, determining whether the state law conflicted "in any

material way with any other law which could apply"; and (3) after finding such a conflict, determining whether the defendant had a significant contact or significant aggregation of contacts that created a state interests. 472 U.S. at 816, 821–22, 105 S.Ct. 2965. Because Defendants do not direct this Court to any conflicting law from another forum, this Court assumes without deciding that there is a conflict and thus skips to the second step to conclude that there is no Due Process violation.

9. As Plaintiff notes, Defendants' concentration on their *current* location is misplaced because the inquiry properly focuses on the class's claims, which arose while Quten was headquartered in California at the address appearing on every Qunol bottle class members purchased.

moved away from the view that the location of the event is controlling"). For these very reasons, courts in California routinely hold that applying California law to nationwide classes comports with the Due Process Clause. *See, e.g., Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 589 (C.D.Cal. 2008) (certifying nationwide California-law class where defendant had California operations and a significant number of class members resided in California); *Keilholtz v. Lennox Hearth Products Inc.*, 268 F.R.D. 330, 339–40 (N.D.Cal.2010) (applying California law to nationwide class where 19% of nationwide sales were in California).

Defendants' sole case finding insufficient contacts is also distinguishable because there the defendant did not commit 99% of the acts that gave rise to the plaintiff's claims. *See* Quten Opp'n 24; Tishcon Opp'n 9. In *Hitachi*, the plaintiffs alleged that the inadequate handling of their warranty inquiries constituted a breach of warranty claim and sought to apply California law to a class comprised of all persons who purchased the defendants' television in the United States. *In re Hitachi TV Optical Block Cases*, 2011 WL 9403, at *2, 2011 U.S. Dist LEXIS 135, at *6 (S.D.Cal. Jan. 3, 2011). The court concluded that the defendants' contacts with the claims were insufficient to comport with due process because the defendant was "only involved in 1% of all warranty inquiries," whereas the "other 99% of warranty inquiries were handled" by third-parties. *Id.* at *9, 2011 U.S. Dist LEXIS 135, at *25. Here, in contrast, Plaintiff alleges that Defendants committed 100% of the acts that give rise to the claims—namely, the production of alleged material misrepresentations about the product.

Thus, California law may be applied to this nationwide class without violating Defendants' Due Process rights.

### ii. Defendants have not met their burden of showing that the law of another forum should apply

 Because the application of California law to the claims of the class does not violate due process, it is Defendants' burden to show that the law of another forum, rather than California law, should apply. *See Wash.*

*Mut. Bank, FA v. Superior Court*, 24 Cal.4th 906, 921, 103 Cal.Rptr.2d 320, 15 P.3d 1071 (2001). Under California's choice-of-law analysis, also referred to as the "governmental interest test," a court must: (1) first determine whether the relevant law is the same or different across the affected jurisdictions; (2) if there is a difference in the law, proceed to analyze each jurisdiction's interest in the application of its own law to the particular circumstances to determine whether a true conflict exists; and (3) if a true conflict exists, weigh the strengths of the interests to determine which state's interest would be more impaired by not having its law applied. *Kearney v. Salomon Smith Barney*, 39 Cal.4th 95, 107–08, 45 Cal.Rptr.3d 730, 137 P.3d 914, 922 (Cal 2006). The first step requires a court to find that there is a "material difference" between the different states' laws "on the facts of this case." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 995 (9th Cir. 2010).

Defendants provide no law from any jurisdiction for the Court to consider, instead citing another court's conclusion that "there are material conflicts between California's consumer protection laws and the consumer protection laws of the other forty-nine states." *See* Quten Opp'n 24 (quoting *In re Hitachi TV Optical Block Cases*, 2011 WL 9403, 2011 U.S. Dist LEXIS 135 (S.D.Cal. Jan. 3, 2011)); Tishcon Opp'n 9. Defendants' misdirection fails to meet its burden.

In *Hitachi*, the plaintiffs bore the burden of showing the absence of any conflict of law, whereas here Defendant has the burden of showing the existence of a conflict. In *Hitachi*, the court analyzed whether applying California law to a nationwide class comported with the Due Process Clause—a determination in which the plaintiff bore the burden. *See Hitachi*, 2011 WL 9403, at *5–7, 2011 U.S. Dist LEXIS 135, at *16–18. The plaintiffs were silent regarding whether there was a conflict between the law of California and another forum, so the court accepted as proof of such a conflict the defendants' citations to cases that reached this conclusion. *Id.*

 Here, in contrast to *Hitachi*, Defendant has the burden of showing that there is

an actual conflict between California and other law. *See Washington Mutual,* 24 Cal.4th at 921, 103 Cal.Rptr.2d 320, 15 P.3d 1071. This burden requires Defendant to convince this Court of "material" differences in the law, as shown "on the facts of this case." *See Pokorny v. Quixtar, Inc.,* 601 F.3d 987, 995 (9th Cir.2010). Because Defendants have not identified any specific state's law or articulated any argument, beyond citation to other cases, to indicate the there is a conflict, Defendants have not met their burden. *See Mazza v. Am. Honda Motor Co.,* 254 F.R.D. 610, 622 (C.D.Cal.2008) ("Defendant's analysis fails to show that these differences are in fact material."). Because Defendants have failed to show that "the laws are materially different," this Court does not proceed to the other two steps in the governmental interest test. *See Washington Mutual,* 24 Cal.4th at 919, 103 Cal.Rptr.2d 320, 15 P.3d 1071; *Student Advantage, Inc. v. Int'l Student Exch. Cards, Inc.,* 2000 WL 1290585, 2000 U.S. Dist. LEXIS 13138, at *59 (S.D.N.Y. Sept. 12, 2000) ("[I]f the foreign law proponent fails to identify any actual conflict or to establish the other state's interest in having its own law applied, even if there were a conflict, California law would prevail . . . .").

In sum, the Court concludes that applying California law to a nation-wide class is appropriate because such application comports with due process and Defendants have not met their burden to show that the law of another forum is more appropriate.

## V. Disposition

For the foregoing reasons, the Court GRANTS IN PART Plaintiff's motion for class certification. The Court DENIES the motion only to the extent that Plaintiffs seek to include within the class those consumers who were exposed to the "3X" representation. Instead, the Court limits the class by deleting the phrase "multiple" and replacing it with "six," to read as follows:

> All persons, excluding officers, directors, and employees of Quten Research Institute LLC or Tishcon Corp. and their immediate families, who on or after January 31, 2007 purchased Qunol CoQ10 in the United States for personal or household use rather than resale or distribution, in packaging stating that Qunol offers *six* times better absorption or effectiveness.