Julie SUEOKA; Delnita Brown; Nancy R. Schauer, Plaintiffs—Appellants,

v.

UNITED STATES of America; United States Department of Justice; United States Department of Treasury; US Marshal Service; Drug Enforcement Agency; US Customs Service; The

Federal Bureau of Investigation; United States Internal Revenue Service; Bureau of Alcohol, Tobacco & Firearms; John Ashcroft, Attorney General; Paul H. O'Neil, Defendants—Appellees.

Julie Sueoka; Delnita Brown; Nancy R. Schauer, Plaintiffs—Appellees,

v.

United States of America; United States Department of Justice; United States Department of Treasury; US Marshal Service; Drug Enforcement Agency; US Customs Service; The Federal Bureau of Investigation; United States Internal Revenue Service; Bureau of Alcohol, Tobacco & Firearms; John Ashcroft, Attorney General, in his official capacity as United States Attorney General; Paul H. O'Neil, in his official capacity as Secretary of the United States Department of the Treasury, Defendants—Appellants.

Nos. 02–56973, 03–55022.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 2004.

Decided May 5, 2004.

Herbert Hafif, Esq., Claremont, CA, Eric Honig, Esq., Marina del Rey, CA, John L. O'Donnell, Jr., Esq., O'Donnell & Harrison, Los Angeles, CA, for Plaintiffs–Appellants.

John E. Lee, Esq., USLA–Office of the U.S. Attorney, Los Angeles, CA, for Defendants–Appellees.

Before: REINHARDT, THOMPSON, and WARDLAW, Circuit Judges.

### MEMORANDUM *

Julie Sueoka, Delnita Brown and Nancy R. Schauer ("plaintiffs") appeal from the district court's order denying certification of ten subclasses in this purported class action for disgorgement of interest and return of improper expense deductions on currency and cash cost bonds. They challenge certain of the district court's findings as to numerosity, typicality and adequacy of representation, as well as its findings

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

that common issues do not predominate and that a class action is not a superior vehicle for resolution of plaintiff class members' claims against the United States. The government cross-appeals, challenging the district court's denial of its (i) summary judgment motion as to Schauer and Brown; (ii) motion to dismiss Schauer and Brown's claims as barred by res judicata; and (iii) motion to dismiss for lack of jurisdiction following partial summary judgment. While we hold that the district court abused its discretion in denying certification, we affirm its denial of the government's motions.

■ I. *Class Certification.* A district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).

The district court must also find that: (1) the prosecution of separate actions would create a risk of: (a) inconsistent or varying adjudications or (b) individual adjudications dispositive of the interests of other members not a party to those adjudications; or (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or (3) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b).

While "a class may be divided into subclasses and each subclass treated as a class," Fed.R.Civ.P. 23(c)(4)(B), each subclass "must independently meet the requirements of Rule 23 for the maintenance of a class action." *Betts v. Reliable Collection Agency, Ltd.,* 659 F.2d 1000, 1005 (9th Cir.1981). Moreover, the party seeking certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met. *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186, amended, 273 F.3d 1266 (9th Cir.2001).

1. *Numerosity (Rule 23(a)(1)).* The district court correctly found that subclasses A–1, A–2 and A–3 (the "interest" subclasses) satisfy the numerosity requirement. It abused its discretion, however, in concluding that plaintiffs failed to meet their burden of proving numerosity as to the B (cash cost bonds—interest) and C–1 through C–3 (cash cost bond—improper deductions) subclasses. The district court erroneously found that because plaintiffs defined their subclasses as having posted "cash cost bonds" and the data submitted included information as to other types of bonds, it was left with "no information in the record regarding the number of bonds—in absolute numbers, by percentage, or on average—that are secured by cash rather than posted by a surety." The flaw in this analysis is that the "numerosity data relied on by the plaintiffs" refers to the plaintiffs' interrogatories and the government's responses, which could only have referenced *cash* cost bonds because the interrogatories expressly sought data as to bonds that could be "returned."

Because only cash cost bonds are returnable, as opposed to surety bonds (for which no cash is paid, but instead an obligation is created which is later exonerated) the numerosity data must refer to cash cost bonds. For example, the numerosity data for subclass B–1 relies on Interrogatory numbers 5 and 6. Interrogatory number 5 states:

Please identify the total number of persons who posted cost bonds to contest federal asset forfeiture proceedings, specifically in the judicial districts within the jurisdiction of the 9th and 6th Circuit Court of Appeals, in which a judicial forfeiture is still pending (no final judgment), *and the cost bond has not been returned.*

(emphasis added). The government's response states:

From the data compiled in CATS, it appears that approximately 500 assets (CATS permits the identification of the number of assets, but not the number of persons) involve pending judicial cases in these circuits *where the cost bond has not been returned.*

(emphasis added). Language indicating that "the cost bond has not been returned," can only mean that a cash cost bond has in fact been posted. Otherwise, there would be nothing to return (the bond would simply be exonerated), and the interrogatory and response would not make any sense. Accordingly, the numerosity data relied on by the plaintiffs properly pertained only to cash cost bonds.

■ The district court also abused its discretion in finding that plaintiffs failed to show the numerosity of subclass C–4 on the ground that they "offer no estimate as to the size of this class, nor could they, since it includes only future claimants whose cause of action, if any, has not yet arisen." Although generally mere conclusory allegations as to the estimated class size are insufficient for plaintiff's burden of proof, it is also true that where "only injunctive or declaratory relief is sought, some courts have held that the numerosity requirement is relaxed so that even speculative or conclusory allegations regarding numerosity are sufficient to permit class certification." 5 Moore's Federal Practice § 23.22[3][b] (3d ed.2003). In *Goodnight*

*v. Shalala,* 837 F.Supp. 1564 (D.Utah 1993), for example, the court found the numerosity requirement satisfied where plaintiffs could only speculate as to the size of a class, reasoning that "when injunctive relief is the only relief requested, even speculative or conclusory representations regarding numerosity will suffice to permit class certification." *Id.* at 1582. Because plaintiffs seek injunctive and declaratory relief, the numerosity requirement is relaxed and plaintiffs may rely on the reasonable inference arising from plaintiffs' other evidence that the number of unknown and future members of proposed subclass C–4, i.e., those who post cash cost bonds, is sufficient to make joinder impracticable.

2. *Commonality (Rule 23(a)(2)).* The district court correctly found commonality as to all ten subclasses. In any event, because the government failed to cross-appeal this issue, it has waived any opposition.

■ 3. *Typicality (Rule 23(a)(3)) and Adequacy of Representation (Rule 23(a)(4)).* The district court correctly ruled that only subclasses A–2, B–3 and C–3 (the subclasses that include the named plaintiffs) meet the typicality and adequacy of representation certification requirements. These requirements tend to merge as guideposts for determining "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 158 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). "We have repeatedly held that a class representative must be a part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 156, 102 S.Ct. 2364 (internal quotation marks omitted); *see also Sosna v. Iowa,* 419 U.S. 393,

403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) ("A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court."). This rule applies equally to subclasses. *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir.1981). Certification of a subclass fails where a subclass representative is not a member of the subclass he or she seeks to represent. *See id.* at 1005–06 (quoting *Johnson v. American Credit Co. of Georgia*, 581 F.2d 526, 532 (5th Cir.1978)) (" 'A subclass, then, must independently meet all of rule 23's requirements for maintenance of a class action.' ... [A] fundamental requirement in the establishment of a subclass is that the representative plaintiff must be a member of the class she wishes to represent.").

Once having so ruled, however, granting leave to amend the complaint to name representatives of each of the remaining subclasses would not have been a futile act. Because the record demonstrates the existence of numerous persons holding claims typical of subclasses A–1, A–3, B–1, B–2, C–1 and C–2, leave to amend should be granted to add named plaintiffs who are both typical and can adequately represent each of those subclasses. With respect to subclass C–4, it is unclear from the record whether plaintiffs will be able to name a proper representative for a class of future claimants who post cash cost bonds. Moreover, certification of subclass C–4 may prove unnecessary. If Brown is successful in obtaining injunctive relief, future claimants could benefit from ancillary relief, thus obviating the need for certification of a subclass of such future claimants. Thus, although we remand with instructions to grant leave to amend to identify named representatives for all subclasses other than A–2, B–3 and C–3, the district court or the plaintiff class may decide to eliminate C–4 as a subclass.

■ **4.** *Rule 23(b)*. The purported class need only satisfy one of Rule 23(b)'s prongs to be sustainable. The district court abused its discretion in finding that none of the ten subclasses satisfied any of the criteria in Rule 23(b). Because we conclude that each of the subclasses satisfies Rule 23(b)(1)(A), we need not reach the district court's other Rule 23(b) findings.

To invoke Rule 23(b)(1)(A), plaintiffs must show that there is a risk that defendants' efforts to comply with the judgment in one action will require them to act inconsistently with the judgment in another. *See McDonnell Douglas Corp. v. United States Dist. Court*, 523 F.2d 1083, 1086 (9th Cir.1975). The district court characterized the class action as one for damages, and on this basis applied the general rule that certification under Rule 23(b)(1)(A) is not appropriate for damages actions. This finding is both erroneous and inconsistent with the rationale of *United States v. $277,000 U.S. Currency*, 69 F.3d 1491 (9th Cir.1995), and with its ruling on Schauer's cost bond. *$277,000* holds that the government must disgorge interest actually or constructively earned on seized property ultimately returned to the owner. *Id.* at 1493. There we found sovereign immunity was not implicated because "[t]here [was] no element ... of forcing the government to pay for damage it ha[d] done, only [an order] that it must disgorge benefits that it ha[d] actually and calculably received from an asset that it ha[d] been holding improperly." *Id.* at 1498. In other words, "the government w[ould] not be allowed to retain the fruits, once the tree ha[d] been ordered returned to its owner." *Id.* at 1497. Here, each of the subclasses seek declaratory and injunctive relief in the form of disgorgement of interest and improper deductions, not damages as the district court found. Addressing

the availability of prospective injunctive or declaratory relief in a single, rather than multiple, action, is the preferable approach because it protects the government from inconsistent individual judgments.

The district court also erred in concluding that requiring interest or reimbursements as to subclasses A–1, B–1 and C–1 (pending cases), would unduly interfere with those ongoing matters. It reasoned that to "direct the government to pay interest in every case and return cost bonds subject only to certain enumerated deductions would impair its ability to resolve cases on an individual basis." However, subclasses A–1 and B–1, which request disgorgement of interest, by definition affect only those putative members within the jurisdiction of the Ninth and Sixth Circuits. The Ninth and Sixth Circuits have each held that interest must be disgorged on returned currency. *See* *$277,000 U.S. Currency,* 69 F.3d at 1493; *see also United States v. $515,060.42 in U.S. Currency,* 152 F.3d 491 (6th Cir. 1998). Therefore, a judgment directing the payment of interest in pending Ninth and Sixth Circuit cases will not unduly interfere with settlement efforts in those cases because controlling law already requires such payment. As to subclass C–1, an order prohibiting the government from making cost bond deductions, other than those allowed by law, would similarly not interfere with settlement efforts.

■ II. *Summary Judgment.* The district court did not err in denying the government's motion for summary judgment because the no-interest rule does not bar Schauer's claim for disgorgement of cost bond interest, retention of interest on Schauer's bond was not a reasonable user fee, and the government could not begin deducting costs on Brown's bond before service of a forfeiture complaint.

1. *Disgorgement of Interest on Schauer's Cost Bond.* The district court did not err in denying the government's motion for summary judgment as to the claim for disgorgement of cost bond interest by Schauer. When the government is directed to return property to its owner, it must disgorge the earnings generated by the property while in its possession. *$277,000 U.S. Currency,* 69 F.3d at 1493. Because this principle is broad enough to encompass interest earned on the portion of a cost bond that is returned to its owner, the district court did not err in rejecting the government's contention that the no-interest rule bars Schauer's claim for disgorgement of cost bond interest. Moreover, the retention of interest on Schauer's bond was not a reasonable user fee because the government failed to provide sufficient evidence that the interest was actually used to pay for the cost of government services or was a fair approximation of the costs of benefits supplied. *See United States v. Sperry Corp.,* 493 U.S. 52, 60, 110 S.Ct. 387, 107 L.Ed.2d 290 (1989) (reasonable user fee must "be a fair approximation of the cost of benefits supplied") (internal quotation marks omitted).

2. *Disgorgement of Deductions from Brown's Cost Bond.* The district court correctly denied the government's motion for summary judgment as to Brown's claim for disgorgement of post-seizure, pre-complaint cost bond deductions because the government may not begin deducting costs before service of a forfeiture complaint. *See, e.g., United States v. One 1969 Plymouth Two–Door Hardtop,* 360 F.Supp. 488, 489 (M.D.Ala.1973) ("expense of storing the property prior to the claimant's intervention should not be taxed").

■ III. *Res Judicata.* The district court correctly denied the government's motion to dismiss Schauer and Brown's claims as barred by res judicata. Res

judicata bars subsequent claims only if the present dispute involves the same claim or cause of action as the original dispute. *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir.1988). To determine whether the disputes involve the same claim or cause of action, courts consider whether the two suits arise out of the same transactional nucleus of facts. *International Union of Operating Engineers v. Karr*, 994 F.2d 1426, 1429 (9th Cir.1993). "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Id.* If res judicata were to apply here, it would essentially require Schauer and Brown to have litigated their current claims, that the government failed to disgorge interest and improperly withheld expenses from their cost bonds, with their initial claims for forfeiture. However, because Schauer and Brown's current disgorgement claims could only arise after the government became obligated to repay the balance of the bonds, res judicata does not apply.

IV. *Subject Matter Jurisdiction.* The district court correctly denied the government's motion to dismiss the claims of each individual plaintiff for lack of subject matter jurisdiction based on mootness. "[M]ootness has two aspects: when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *United States Parole Commission v. Geraghty*, 445 U.S. 388, 396, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (internal quotation marks omitted). As of the district court's grant of partial summary judgment, it had not yet determined several issues such as the method of computation of interest, the interest rates, the effective dates as to when interest should start to accrue or the allowable cost bond deductions. Accordingly, these issues

were still "alive" and the plaintiffs still possessed a personal stake in the action.

AFFIRMED in part/REVERSED and REMANDED in part.