Heather Joy ARNOTT, et al., Plaintiffs,

v.

**UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, et al., Defendants.**

No. SA 10–CV–1423(RNBx).

United States District Court,
C.D. California,
Southern Division.

Oct. 22, 2012.

**582**

Herbert Ronald Klasko, Klasko Rulon Stock & Seltzer LLP, Philadelphia, PA, Ira J. Kurzban, Kurzban Kurzban Weinger Tetzeli & Pratt PA, Miami, FL, Marc Van Der Hout, Van Der Hout & Brigagliano and Nightingale, San Francisco, CA, for Plaintiffs.

Glenn M. Girdharry, Bradley Bruce Banias, Geoffrey Forney, U.S. Department of Justice, Washington, DC, for Defendants.

### ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

DAVID O. CARTER, District Judge.

Before the Court is a Motion for Class Certification (Dkt. 50) filed by Plaintiffs Heather Joy Arnott, et al. (Plaintiffs), in their suit against Defendants United States Citizenship and Immigration Services, Janet Napolitano, Alejandro Mayorkas, and Rosemary Melville (Defendants). After considering the moving papers and oral arguments, this Court GRANTS Plaintiffs' motion and CERTIFIES the class.

### I. Background

Plaintiffs are immigrant investors who sought lawful permanent residence in the United States through the EB–5 investor program. First Amended Complaint (FAC)

1. Four plaintiffs (Kyu Seock Lee, Ja Hyun Pak, Dae Won Han, and Jong Hyon Lee) and their

(Dkt. 45) at ¶ 1. Under the Immigration and Nationality Act (INA), the EB–5 immigrant investor program allows foreign nationals and their families to become conditional permanent residents, and then lawful permanent residents, upon investment of $500,000 each in a "new commercial enterprise" in a designated "regional center" for the purpose of creating at least ten jobs for U.S. workers. *Id.* at ¶¶ 2–9; 8 U.S.C. § 1153(b)(5); 8 C.F.R. § 204.6(e-f). In this case, Plaintiffs' new commercial enterprises were limited partnerships in designated regional centers in Philadelphia and Los Angeles. FAC at ¶ 1. Plaintiffs allege that each of their business plans explicitly stated that, in order to create the required number of jobs, they could make loans "to multiple job-creating businesses." *Id.* at ¶ 22.

Plaintiffs each submitted individual I–526 petitions for conditional approval of their business plans, which Defendant USCIS granted. *Id.* After Plaintiffs' partnerships' initial investments failed to create the required number of jobs, the partnerships shifted their investments to other job-creating businesses, as contemplated by their approved business plans. *Id.* at ¶¶ 1, 22.

As required by law, between twenty-one to twenty-four months after lawfully entering the U.S., Plaintiffs filed individual I–829 petitions to demonstrate compliance with the EB–5 program requirements, and ultimately to have their conditional residency status adjusted to that of lawful permanent residents. *Id.* Currently, however, USCIS has either denied or indicated that it will deny Plaintiffs' I–829 petitions because Plaintiffs' second job-creating business investment was not specifically named in their approved I–526 petitions. *Id.* An I–829 denial requires immigrant investors immediately to surrender their Alien Registration Cards, leaving them without lawful immigration status in the U.S. *Id.;* Compl. (Dkt. 1) Ex. A at 2.

#### a. Gravamen of Plaintiffs' claims

On July 2, 2012, Plaintiffs filed their First Amended Complaint.[1] *See* FAC (Dkt. 45).

families initially filed a Complaint on September 20, 2010. *See* Compl. (Dkt. 1). Those plaintiffs

The gravamen of Plaintiffs FAC is that, even though Plaintiffs complied with the Immigrant Investor Law and created the required number of jobs with their investments, Defendants "radically and abruptly changed their rules" concerning the approval of I–829 petitions. Mot. (Dkt. 50) at 7. Pursuant to this new USCIS rule, which Plaintiffs allege was introduced in an agency-wide "Neufeld Memorandum" on December 11, 2009, Defendants began retroactively applying a policy that disallowed "material changes" in investment strategies, leading to the recent or imminent denial of Plaintiffs' I–829 petitions. *Id.* Plaintiffs seek injunctive and declaratory relief. FAC (Dkt. 45) at 53–56.

### b. Plaintiff's Motion for Class Certification

On September 24, 2012, Plaintiffs filed the instant Motion for Class Certification. *See* Mot. (Dkt. 50). Defendants filed their Opposition on October 1, 2012. *See* Def's Opp'n (Dkt. 58). Plaintiffs filed a Reply in Support of Motion for Class Certification on October 8, 2012. *See* Pl's Reply (Dkt. 63).

Plaintiffs seek certification of the following class:

> All conditional residents and their dependents who obtained their status by investing under the employment-based fifth-preference category and have [had] or will have their I–829 petitions to remove their conditional residency denied, despite investing the requisite funds and employing 10 persons directly or indirectly, because of Defendants' policy announced on December 11, 2009, that if an investor materially changed his or her investment after the approval of an I–526 petition he or she may not receive approval of an I–829 petition but must file another I–526 petition and begin the process again.

Mot. (Dkt. 50) at 9–10. Plaintiffs assert six causes of action:

1) Improper retroactive application of an interpretive rule;

2) Violation of the Administrative Procedure Act (APA), 5 U.S.C. § 553 et seq.;

3) Arbitrary and capricious action in violation of the Immigration and Nationality Act and the Administrative Procedure Act, 5 U.S.C. § 706(2)(A, D);

4) Exceeding Statutory Authority, 8 U.S.C. § 1186b; 8 C.F.R. § 216.6;

5) Violation of the Due Process Clause of the Fifth Amendment of the U.S. Constitution; and

6) Estoppel.

Mot. (Dkt. 50) at 15.

### II. Legal Standard

██ Federal Rule of Civil Procedure 23 governs class actions. *See* Fed.R.Civ.P. 23. A party seeking class certification must demonstrate the following prerequisites: "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992) (citing Fed.R.Civ.P. 23(a)). The party may not rest on mere allegations, but must provide facts to satisfy these requirements. *Doninger v. Pac. Northwest Bell, Inc.,* 564 F.2d 1304, 1309 (9th Cir.1977) (citing *Gillibeau v. Richmond,* 417 F.2d 426, 432 (9th Cir.1969)).

After demonstrating the four prerequisites of numerosity, commonality, typicality, and adequacy, a party must also demonstrate either: (1) a risk that separate actions would create incompatible standards of conduct for the defendant or prejudice individual class members not parties to the action; (2) the defendant has treated the members of the class as a class, making appropriate injunctive or declaratory relief with respect to the class as a whole; or (3) common questions of law or fact predominate over questions affecting individual members and a class action is a superior method for fairly and efficiently adjudicating the action. Fed.R.Civ.P. 23(b)(1–3).

---

subsequently located a number of other immigrant investors in substantially the same position, and this Court granted Plaintiffs' Motion to

Amend Complaint (Dkt. 38) and include new plaintiffs. Minute Order (Dkt. 44).

The decision to grant or deny a motion for class certification is committed to the trial court's broad discretion. *Bateman v. American Multi–Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir.2010). However, a party seeking class certification must affirmatively demonstrate compliance with Rule 23—that is, the party must be prepared to prove that there are *in fact* sufficiently numerous parties and common questions of law or fact. *Wal–Mart Stores, Inc. v. Dukes*, —— U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011). This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.*

### III. Standing

Standing has three elements: (1) an "injury in fact;" (2) a "causal connection between the injury and the conduct complained of;" and (3) redressability, meaning that the injury is likely capable of being redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In a class action, standing is satisfied if "at least one named plaintiff meets the requirements." *Bates v. UPS*, 511 F.3d 974, 985 (9th Cir. 2007).

Defendants argue that Plaintiffs' proposed class definition is defective "because it includes individuals that lack Article III standing." Def's Opp'n (Dkt. 58) at 10. Defendants also claim that, because four of the named plaintiffs "no longer suffer any injury" since "they already have approved I–829 petitions," the Court should not certify the proposed class. *Id.* at 12. The Court rejects Defendants' arguments and concludes that Rule 23, not standing, is the appropriate basis by which to evaluate whether to certify this class.

#### a. Class certification does not require all putative class members to show standing

It is improper for this Court to analyze unnamed class members' Article III standing where, as here, Defendants do not successful-

ly challenge the putative class representatives' standing. *See Lewis v. Casey*, 518 U.S. 343, 395, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (Souter, J., concurring) (class certification "does not require a demonstration that some or all of the unnamed class could themselves satisfy the standing requirements for named plaintiffs"). This Circuit has repeatedly held that "[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements.... Thus, we consider only whether at least one named plaintiff satisfies the standing requirements." *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir.2011) (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir.2007) (en banc)); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979 (9th Cir. 2011) ("[O]nly one named Plaintiff must meet the standing requirements.").

Defendants cite *Mazza v. American Honda Motor Company* for the contrary proposition that "no class may be certified that contains members lacking Article III standing." 666 F.3d 581, 594 (9th Cir.2012). This single line in *Mazza*, unexplained and absent any discussion of prior Ninth Circuit precedent,[2] directly contradicts *Bates*, which was rendered *en banc. See Bates*, 511 F.3d. A three judge panel cannot overrule prior Ninth Circuit precedent—let alone an *en banc* decision—unless "the reasoning or theory of [ ] prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority." *Pinto v. Holder*, 648 F.3d 976, 982 (9th Cir.2011). There is no intervening higher authority in this case.

Indeed, this Court has recently held that, "where the class representative has established standing and defendants argue that class certification is inappropriate because unnamed class members' claims would require individualized analysis of injury or differ too greatly from the plaintiff's, a court should analyze these arguments through Rule 23 and not by examining the Article III standing of the class representative or unnamed class members." *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 533

---

**2.** The *Mazza* court cites to an out-of-circuit case to support this rule. *See Mazza*, 666 F.3d at 594

(citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir.2006)).

(C.D.Cal.2011) *reconsideration denied*, 280 F.R.D. 540, 547 (C.D.Cal.2012) (noting that "*Mazza* did not and could not overrule Ninth Circuit precedent"). Other district courts in the Central District of California have continued, post-*Mazza*, to hold that, in order to certify a class, a court need only find standing for *one* named plaintiff. *See Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 475 (C.D.Cal.2012) (noting that "[n]ot all plaintiffs and class members must demonstrate standing"); *see also Franco–Gonzalez, et al. v. Napolitano, et al.*, CV 10–02211–DMG–DBTx, Dkt. 455, slip op. at 3–6 (C.D.Cal. August 27, 2012) (distinguishing *Mazza* and rejecting its authority).

### b. Plaintiffs have standing and continue to suffer an injury

■ Defendants argue that "the named Plaintiffs no longer suffer any injury," Def's Opp'n (Dkt. 58) at 12, even though this Court previously rejected substantially the same argument in its Order Denying Defendants' Motion to Dismiss. Minute Order (Dkt. 44) at 2. After USCIS reconsidered the four original named plaintiffs' I–829 denials and removed the conditions on their residency, Defendants moved to dismiss the case because "the named Plaintiffs ... no longer have a cause of action." Def's Mot. (Dkt. 37) at 1–2. However, this Court held that "Defendants [did not meet] their burden to show mootness because they still maintain that their prior denial was legal." Minute Order (Dkt. 44) at 2 (citing *Doe v. Harris*, 696 F.2d 109, 113 (D.C.Cir.1982)). Thus, without "an adjudication of the legality of the Defendants' denial, there is nothing to prevent Defendants from rescinding Plaintiffs' greencards," and Plaintiffs still have standing. Minute Order (Dkt. 44) at 2 (citing *Case v. Jones–Kelly*, 2010 WL 99086 (S.D.Ohio Jan.5, 2010)).

In addition, the other named plaintiffs who either have had or will have their I–829 petitions denied due to Defendants' "material change" policy also have Article III standing. Defendants do not appear to challenge the standing of those plaintiffs who have already received denials of their I–829 petitions, *see* Def's Opp'n (Dkt. 58) at 12, and Defendants'

clear commitment to the "material change" policy poses a "credible threat of future injury" sufficient to give pre-denial investors who have made such material changes Article III standing. *See Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 992 (9th Cir.2012).

Since, "[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements," *Stearns*, 655 F.3d at 1021, and here *all* named Plaintiffs meet the standing requirements, the Court turns to its Rule 23 analysis.

## IV. Class Certification

Having held that Rule 23 is the appropriate vehicle for its analysis, the Court next concludes that Plaintiffs' proposed class satisfies the requirements of Rule 23. As the parties did in their briefs, the Court analyzes Plaintiff's six legal claims together for the purpose of class certification because they all share substantially similar elements and are based on the same facts. *See Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 589 (C.D.Cal. 2011) (analyzing class certification on UCL, CLRA, and common-law fraud claims together because elements were similar).

### a. Class Certification Under Rule 23(a)

#### i. Numerosity

■ Numerosity, the first prerequisite of class certification, requires that the class be "so numerous that joinder of all members is impractical." Fed.R.Civ.P. 23(a)(1). A proposed class of at least forty members presumptively satisfies the numerosity requirement. *See Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir.1982), *vacated on other grounds by County of Los Angeles v. Jordan*, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982); *Slaven v. BP America, Inc.*, 190 F.R.D. 649, 654 (C.D.Cal.2000).

■ Here, Defendants do not appear to dispute numerosity, and their Opposition indicates that they consider the proposed class "overly broad." Def's Opp'n (Dkt. 58) at 11. Plaintiffs, for their part, identify 110 known members of the putative class, *see* FAC (Dkt. 45) Ex. 3, and further observe that "[s]ome investors still in conditional resident status ... [who] would otherwise qualify for remov-

al of conditions ... will be rejected by Defendants at the time they apply for removal of conditions, due to Defendants' decision to continue applying the material change policy retroactively." Mot. (Dkt. 50) at 11–12. Defendants do not dispute this assertion.

Accordingly, with 110 identified members, and additional future members likely to be added, Plaintiffs have shown sufficient numerosity to satisfy the requirements of Rule 23(a)(1). *See Jordan,* 669 F.2d at 1319; *see also Sueoka v. United States,* 101 Fed.Appx. 649, 653 (9th Cir.2004) ("Because plaintiffs seek injunctive and declaratory relief, the numerosity requirement is relaxed and plaintiffs may rely on [ ] reasonable inference[s] arising from plaintiffs' other evidence that the number of unknown and future members of [the] proposed subclass ... is sufficient to make joinder impracticable.").

### ii. Commonality

The "commonality" prerequisite mandates that there be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Commonality requires that class members share a common injury and this injury is "capable of classwide resolution," meaning that determination of the claims' "truth or falsity will resolve an issue that is central to [the claims'] validity." *Wal–Mart Stores, Inc. v. Dukes,* —— U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011). For the purposes of Rule 23(a)(2), "even a single common question will do." *Id.* at 2556. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir.1998). As the Ninth Circuit has explained, "[t]he commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3) [predominance]." *Id.*

Defendants argue that the "wide factual variation that exists between the different EB–5 investment projects and business plans of each proposed class member" defeats commonality. Def's Opp'n at 16 (citing *Nguyen Da Yen v. Kissinger,* 70 F.R.D. 656, 663–64 (N.D.Cal.1976); *Wal–Mart,* 131 S.Ct. at 2551). As evidence of that impermissibly wide factual variation, Defendants point out that "EB–5 investment projects are unique," business plans are "vastly dissimilar," and countrywide investment plans are "too numerous to count." Def's Opp'n at 16–17.[3]

Plaintiffs contend that such factual differences "are beside the point," since Plaintiffs and putative class members do not ask for individualized adjudications of their respective I–829 petitions, but rather for injunctive relief preventing Defendants from retroactively applying "a particular *legal* policy" that has caused the same injury to each Plaintiff and every class member. Pl's Reply (Dkt. 63) at 12 (emphasis in original).

The Plaintiffs' analysis is correct. While Defendants cite *Nguyen* in support of their argument against a finding of commonality, in that case the court explicitly hinged its ruling on the lack of a specific immigration policy being challenged by the proposed class, observing that "there is no [INS] policy" under attack, but rather the plaintiffs proposed a vague common question that encompassed all "the ways in which [INS] and the other federal defendants dealt with each individual [class member]." 70 F.R.D. at 663. Here, the Plaintiffs *do* attack a specific policy, and they only seek adjudication of the permissibility of applying that policy retroactively to investors who already received approval of I–526 petitions that contemplated multiple or shifting investments. *See* FAC (Dkt. 45) at 53–56. The narrow focus of this

---

**3.** Defendants also argue that Plaintiffs fail to establish commonality because this Court previously issued an Order declining to consolidate this action with *Cho v. USCIS,* CV 11–10750–SVW–JPRx. *See* Def's Opp'n (Dkt. 58) at 17–18. While it is true that *Cho* also deals with the "material change" policy, and this Court denied the consolidation by indicating that the case presented "not the same facts," with "different businesses [and] geographic locations," *id.* Ex. 3,

Defendants fail to note that *Cho* was distinguishable. In that case, the plaintiffs did *not* allege that their original I–526 petitions contemplated multiple investments. *Cho* Compl. (Dkt. 1) ¶ 1. Unlike these Plaintiffs, and unlike the proposed class, the plaintiffs in *Cho* dissolved their I–526–approved partnership, then moved their investments from one business to another without prior approval of such a business plan. *Id.* at ¶¶ 31–32.

inquiry and the specificity of the proposed class ensure that the injunctive and declaratory relief sought will "resolve an issue that is central to the validity of each one of the [class members'] claims." *Wal-Mart*, 131 S.Ct. at 2551.

Indeed, the Court's previous Order denying Defendant's Motion to Dismiss highlights the specificity of the issue to be decided by this case. The named Plaintiffs and proposed class members each assert the same six causes of action, and this Court has placed at the center of each one of those analyses variations on the same question of retroactivity. *See* Minute Order (Dkt. 22) at 12 ("To the extent Plaintiffs' claim is based solely on the allegation that their approved I–526 petitions disclosed that multiple loans would be made to various job-creating entities, but their I–829 petitions were denied nonetheless, Defendants' Motion [to Dismiss] is denied."). Each surviving claim turns on the answer to that same basic inquiry, *see Id.* at 10–14, and the declaratory and injunctive relief sought by each Plaintiff and each class member is identical.

To the extent that Defendants attempt to mischaracterize the proposed class as one that includes *any* immigrant investor who has received a denial citing the "material changes" policy, not just the investors whose I–526 petitions specifically disclosed that multiple loans could be made to different job-creating entities, see Def's Opp'n at 16–17, this Court will alter the definition, for clarity, to read as follows:

> All conditional residents and their dependents who obtained their status by investing under the employment-based fifth-preference category, who received USCIS approval of an I–526 plan that specifically disclosed that loans could be made to *multiple* job-creating entities, and who have had or will have their I–829 petitions denied, despite investing the requisite funds and employing 10 persons directly or indirectly, *solely* because of Defendants' policy (announced on December 11, 2009) that if an investor materially changed his or her investment after the approval of an I–526 petition he or she may not receive approval

of an I–829 petition but must file another I–526 petition and begin the process again.

### iii. Typicality

The typicality requirement demands that a named plaintiff's claims be "reasonably co-extensive with those of absent class members," although "they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998). "The purpose of the typicality requirement is to assure that the interests of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508. Here, the Court concludes that the claims of the named Plaintiffs are typical of the entire proposed class. Again, Defendants' brief fails to address the issue of typicality, and does not appear to dispute Plaintiffs' argument.

All of the named Plaintiffs, and all unnamed class members, share a common interest in challenging the allegedly retroactive application of Defendants' "material change" rule as it applies to I–829 petitions. *See* Mot. (Dkt. 50) at 16. By definition, the proposed class only includes those immigrant investors who, "after the approval of an I–526 petition," are denied or will be denied approval of their follow-up I–829 petition "*solely* because of Defendants' [material change] policy." *Id.* at 9–10. All named Plaintiffs were approved for an I–526 business plan that contemplated investments in multiple job-creating projects. All named Plaintiffs have had or can expect to have their I–829 petitions denied *because of* the "material changes" implied by their multiple investments. Thus, the declaratory and injunctive relief sought by the named Plaintiffs is sufficiently "co-extensive with" the relief sought by unnamed class members, since a rejection of the same "material change" rule is all the relief sought by every class member. *See Hanlon*, 150 F.3d at 1020; *see also Haggart v. United States*, 89 Fed.Cl. 523, 534 (Fed.Cl. 2009) (typicality exists "where the named plaintiffs are similarly situated to the rest of the proposed class by virtue of . . . allegations of an analogous statutory violation") (citation omitted).

### iv. Adequacy of the Named Representative

 An adequate representative is one who will "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Due process requires that absent class members have an adequate representative. *See Hansberry v. Lee,* 311 U.S. 32, 43, 61 S.Ct. 115, 85 L.Ed. 22 (1940). A representative is adequate where (1) there is no conflict of interest between the representative and its counsel and absent class members, and (2) the representative and its counsel will "pursue the action vigorously on behalf of the class." *Hanlon,* 150 F.3d at 1020 (internal citations and quotations omitted).

Defendant does not appear to dispute the adequacy of the named representatives here. As described in Section IV(a)(iii) of this Order, the named Plaintiffs share a common interest with all class members in preventing Defendants from denying I–829 petitions based on previously-approved I–526 petitions that conflict with the "material change" policy. The same relief that would resolve Plaintiffs' claims would also resolve the claims of the unnamed class members.

Likewise, Defendant does not dispute that Plaintiffs' counsel is qualified to "pursue the action vigorously" on behalf of the proposed class. Plaintiffs' counsel has worked as class action counsel on numerous immigration cases in federal district court, as well as at the appellate level and before the Supreme Court of the United States. Mot. (Dkt. 50) at 18–19.

### b. Class Certification under Rule 23(b)(2)

After satisfying the requirements of Rule 23(a), the proposed class must also satisfy at least one of the three requirements listed in Rule 23(b). Thus, the Court turns to the requirements of Rule 23(b)(2): the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2). Defendants offer no argument against certification under Rule 23(b)(2), electing to address only the requirements of Rule 23(b)(3). *See* Def's Opp'n (Dkt. 58) at 18–19. Because the Court concludes that the requirements of Rule 23(b)(2) are met, the Court refrains from analyzing this case under Rule 23(b)(3).

 Rule 23(b)(2) allows for the certification of a class when "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal–Mart,* 131 S.Ct. at 2557. The rule applies when "class members complain of a pattern or practice that is generally applicable to the class as a whole." *Rodriguez v. Hayes,* 591 F.3d 1105, 1125 (9th Cir.2009) (quoting *Walters v. Reno,* 145 F.3d 1032, 1047 (9th Cir. 1998)). Here, the class only includes investors with approved I–526 petitions that explicitly contemplated investments in multiple businesses, but are nevertheless rejected for I–829 approval "because of Defendants' [material change] policy." Relief would be provided to the entire class by an injunction or declaratory judgment preventing the Defendants from denying I–829 petitions because of the "material change" rule as it applies retroactively to previously-approved I–526 business plans.

 Even when all Rule 23(b)(2) requirements are met, courts may exercise discretion to deny certification when the relief sought by plaintiffs acting alone would, "as a practical matter, produce the same result as formal class-wide relief." *James v. Ball,* 613 F.2d 180, 186 (9th Cir.1979), *rev'd on other grounds,* 451 U.S. 355, 101 S.Ct. 1811, 68 L.Ed.2d 150 (1981). Plaintiffs argue that such discretionary factors weigh in favor of granting class certification, since a class action "avoid[s] the unnecessary duplication that would inhere were each class member's claim adjudicated separately." Mot. (Dkt. 50) at 20. Plaintiffs also warn that a denial of class certification could lead to inconsistent adjudications on the same issue with respect to different class members, and subsequent incompatible standards for Defendants moving forward. *Id.* at 20–21. In addition, the Court notes that Rule 23(b)(2) class actions have the added benefit of providing notice to unnamed class members who might not otherwise know they are entitled to relief and enabling class members to avoid

the mooting of important claims. *See Marilley v. Bonham,* 2012 WL 851182, *7 (N.D.Cal. Mar. 13, 2012).

Defendants argue that the Court should exercise its discretion and refuse to certify Plaintiffs' proposed class because its geographic scope is too broad, and "nationwide class actions are disfavored" when they might "improperly interfere with the litigation of similar issues in other judicial districts." Def's Opp'n at 14 (quoting *Califano v. Yamasaki,* 442 U.S. 682, 702, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)). Defendants fail to identify any such ongoing litigation with which this litigation might interfere, however, and Plaintiffs properly point out that the interests of judicial efficiency, economy, and equity weigh in favor of class certifications that offer relief "dictated by the extent of the violation established, not by the geographical extent of the plaintiff class." *Yamasaki,* 442 U.S. at 702, 99 S.Ct. 2545 (upholding certification of a nationwide class); *see also Johnson v. Railway Exp. Agency, Inc.,* 421 U.S. 454, 466 n. 12, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) (acknowledging "the purposes of litigatory efficiency served by class actions"); *Am. Pipe & Const. Co. v. Utah,* 414 U.S. 538, 553, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) (identifying "efficiency and economy of litigation" as "a principal purpose of the [class action] procedure").

## V. Disposition

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion for Class Certification (Dkt. 50). For clarity, the Court alters the proposed definition of the class to read as follows:

> All conditional residents and their dependents who obtained their status by investing under the employment-based fifth-preference category, who received USCIS approval of an I–526 plan that specifically disclosed that loans could be made to *multiple* job-creating entities, and who have had or will have their I–829 petitions denied, despite investing the requisite funds and employing 10 persons directly or indirectly, *solely* because of Defendants' policy (announced on December 11, 2009) that if an investor materially changed his or her

investment after the approval of an I–526 petition he or she may not receive approval of an I–829 petition but must file another I–526 petition and begin the process again.